# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## BID PROTEST

| | |
|---|---|
| CROMAN CORPORATION, | Case No.  12-75C |
| Plaintiff, | Judge George W. Miller |
| v. | Filed Under Seal on June 6, 2012 |
| THE UNITED STATES, | |
| Defendant, | |
| and | |
| MOUNTAIN WEST HELICOPTERS, LLC, | |
| and | |
| COLUMBIA HELICOPTERS, INC., | |
| and | |
| SILLER HELICOPTERS, INC., | |
| Defendant-Intervenors. | |

## DEFENDANT-INTERVENOR SILLER HELICOPTERS, INC.'S OPPOSITION TO CROMAN CORPORATION'S MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD AND CROSS-MOTION FOR JUDGMENT ON ADMINISTRATIVE RECORD

## TABLE OF CONTENTS

I.    STATEMENT OF THE CASE ................................................................................ 1

II.   QUESTION PRESENTED .................................................................................... 2

III.  STATEMENT OF FACTS .................................................................................... 2

IV.   CROMAN HAS FAILED TO PROVE THAT IT HAS STANDING
      TO PURSUE THE PROTEST ............................................................................. 8

      A.    Croman Is Not An Interested Party Because It Has Failed
            To Show A Substantial Chance Of Winning The Award ......................... 9

V.    STANDARD OF REVIEW ................................................................................ 10

      1.    The Protestant Must First Prove Error ................................................. 10

      2.    The Protestant Must Prove Prejudice .................................................. 12

VI.   ARGUMENT ...................................................................................................... 12

      A.    Croman Has Failed To Meet Its Heavy Burden Of Proving
            That The Government Acted Irrationally ............................................. 12

      B.    Croman Is Not Prejudiced By Any Conduct Of The Government ......... 18

      C.    The Court Should Not Issue Permanent Injunctive Relief .................... 18

            1.    Croman Does Not Meet The Requirement Of Suffering
                  Irreparable Harm ....................................................................... 19

            2.    The Balance Of Harm Tips In Favor Of Denying Injunctive
                  Relief ........................................................................................... 19

            3.    The Public Interest Weighs In Favor Of Denying Injunctive
                  Relief ........................................................................................... 20

VII.  CONCLUSION .................................................................................................. 20

   191.036-1260027.1

## TABLE OF AUTHORITIES

**Cases**

Advanced Data Concepts, Inc. v. United States
    216 F.3d 1054 (Fed.Cir. 2000) ................................................................................. 11

Am. Fed'n of Gov't Employees, AFL-CIO v. United States
    258 F.3d 1294 (Fed.Cir. 2001) ............................................................................. 8,18

Axiom Resource Management, Inc. v. United States
    80 Fed.Cl. 530 (2008) ............................................................................................ 19

Banknote Corp. of Am. v. United States
    365 F.3d 1345 (Fed.Cir. 2004) ............................................................................... 11

Bannum, Inc. v. United States
    404 F.3d 1346 (Fed.Cir. 2005) ........................................................................... 10,12

Blue & Gold Fleet, L.P. v. United States
    492 F.3d 1308 (Fed.Cir. 2007) ............................................................................... 15

Bowman Transp., Inc. v. Ark-Best Freight Sys., Inc.
    419 U.S. 281 (1984) ............................................................................................... 11

Data Gen. Corp. v. Johnson
    78 F.3d 1556 (Fed.Cir. 1996) ................................................................................. 12

Galen Med. Assocs., Inc. v. United States
    369 F.3d 1324 (Fed.Cir. 2004) ............................................................................... 11

Gulf Group Inc. v. United States
    61 Fed.Cl. 338 (2004) ............................................................................................ 11

Honeywell, Inc. v. United States
    870 F.2d 644 (Fed.Cir. 1999) ................................................................................. 11

Impresa Construzioni Geom. Domenico Garufi v. United States
    238 F.3d 1324 (Fed.Cir. 2001) ............................................................................... 11

Info. Tech & Applications Corp. v. United States
    316 F.3d 1312 (Fed.Cir. 2003) ............................................................................. 8,9

International Resource Recovery, Inc. v. United States
    64 Fed.Cl. 150 (2005) ............................................................................................ 11

M. Steinthal & Co. v. Seamans
    455 F.2d 1289 (D.C.Cir. 1971) ............................................................................... 11

MED Trends, Inc. v. United States
    101 Fed.Cl. 638 (2011) ............................................................................................ 9

191.036-1260027.1

Mobile Medical Int'l Corp. v. United States
    95 Fed.Cl. 706 (2010) .................................................................................... 18

Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm
    Mut. Auto. Ins. Co., 463 U.S. 29 (1983) ........................................................ 11

Myers Investigating & Sec. Servs., Inc. v. United States
    275 F.3d 1366 (Fed.Cir. 2002) ...................................................................... 8,9

NEQ, LLC v. United States
    88 Fed.Cl. 38 (2009) ...................................................................................... 16

PGBA, LLC v. United States
    389 F.3d 1219 (Fed.Cir. 2004) ...................................................................... 19

Rex Serv. Corp. v. United States
    448 F.3d 1305 (Fed.Cir. 2006) ........................................................................ 8

Serco, Inc. v. United States
    81 Fed.Cl. 463 (2008) ................................................................................. 15,16

Space Exploration Technologies Corp. v. United States
    68 Fed.Cl. 1 (2005) ........................................................................................ 19

Weeks Marine, Inc. v. United States
    79 Fed.Cl. 22 (2007) ...................................................................................... 12


**Statutes**

5 U.S.C. § 706 ........................................................................................................ 10

28 U.S.C. § 1491(b) .............................................................................................. 8,10

31 U.S.C. § 3551-56 ................................................................................................ 8

191.036-1260027.1

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") and this court's orders dated April 11, 2012 and May 16, 2012, Defendant-Intervenor SILLER HELICOPTERS, INC. ("Siller Helicopters") respectfully submits its opposition to Plaintiff CROMAN CORPORATION's ("Plaintiff" or "Croman") motion for judgment on the administrative record and its cross-motion for judgment on the administrative record.  Further, Siller Helicopters joins in the Government's opposition to Croman's motion and cross-motion. Plaintiff has not met its burden of proving that it has standing to pursue the protest.  Moreover, Plaintiff fails to prove that the award to Siller Helicopters for line item 23 of the RFP was arbitrary or capricious.  Accordingly, the court should deny Plaintiff's motion for judgment on the administrative record and grant both the Government's and Siller Helicopters' motions for judgment on that record.

## I.
## STATEMENT OF THE CASE

This case is about Plaintiff Croman Corporation's desperate attempt, for its benefit and its benefit alone, to force the United States Government to select its technically inferior, lower capacity, higher cost per pound helicopters that do not provide the best value to the Government. Specifically, Croman has utterly failed to meet its burden of proving that it has a substantial chance to receive award of line item 23 of the procurement and therefore Croman does not have standing.

Moreover, Croman's overly simplistic argument completely disregards and ignores documents in the administrative record by claiming that there was no rational basis for the Government's award, in particular the undisputed evidence in the record that Siller Helicopters has a lower cost per pound to transport water to fire areas using the Best Value formula set forth in the RFP.  Accordingly, not only has Croman not met its burden of proving that the Government's award was arbitrary and capricious, but, in fact, the Government has shown a rational basis for its selection of Siller Helicopters for line item 23.

191.036-1260027.1

**II.**
**QUESTION PRESENTED**

Whether Croman's protest is without merit (1) because it is not an interested party since it does not possess the requisite direct economic interest as it does not have a substantial chance to receive the contract award but for an alleged error of the procurement process, and (2) because Croman has not met its burden of proving no rational basis for the Government's award to Siller Helicopters for line item 23.

**III.**
**STATEMENT OF FACTS**

The Department of Agriculture, Forest Service, National Interagency Fire Center (the "Government" or the "Forest Service") issued Request for Proposals ("RFP") AG-02-4B-S-11-9001 to obtain helicopter services primarily for fire suppression.  (AR 5; AR 12 and AR 38.)  The helicopters are to provide aerial firefighting support, deliver water and cargo, and transport passengers as needed.  (AR 5.)  The RFP sought

> One (1) to Thirty Four (34) Standard or Restricted Category, Heavy and Medium (Type I and II) Helicopters fully operated, meeting the requirements of this Schedule and the specifications for operation at the host base, and during the period shown below. Award of helicopters for make and model will be based on best value.  The performance requirements are a <u>minimum</u> and the helicopter will be evaluated for overall best value considering price and other factors.  The Government will determine best value.  [Emphasis added.]

(AR 46.)  The RFP divided the selection of the helicopters into two <u>minimum</u> performance specification requirements. (AR 46 and 115-117.)  For line items 1 through 15, the minimum performance specification requirements were as follows:

> Hovering out-of-ground effect (HOGE)
>
> At 8000 feet pressure altitude and 25° C with jettisonable Payload of 5000 pounds, as determined by Exhibit 13, Standard Interagency Load Calculation form, using a standard pilot weight of 200 pounds and fuel for 1 hour and 30 minutes (01+30) as determined by Exhibit 12, Hourly Flight Rates, Fuel Consumption, and Weight Reduction Chart.  For Computed Gross Weight use Exhibit 22 for load calculation. (AR 117.)

- 2 -

The minimum performance specification requirements for line items 16 through 34 were as follows:

> Hovering out-of-ground effect (HOGE)
>
> At 7000 feet pressure altitude and 20° C with jettisonable Payload of 3300 pounds, as determined by Exhibit 13, Standard Interagency Load Calculation form, using a standard pilot weight of 200 pounds and fuel for 1 hour and 30 minutes (01+30) as determined by Exhibit 12, Hourly Flight Rates, Fuel Consumption, and Weight Reduction Chart.  For Computed Gross Weight use Exhibit 22 for load calculation.  (Id.)

The RFP allowed bidders to submit bids on multiple line items and permitted the Government to award a single contractor multiple awards based on the outcome of the evaluation process. (AR 46.)[1]

Proposals were initially received from 18 bidders on March 4, 2011.  (AR 15993.)  After consulting with fire and aviation management, the Forest Service determined that because of funding concerns an optimum number of aircraft was determined to be 30, and as a result four line items were eliminated based on staffing and location requirements.  (Emphasis added.) (AR 15994.)  One of the line items (No. 22) eliminated was in Porterville, California.[2]  (Id.) During the evaluation, two aircraft ███████████████████████████████████████ ███████████████████████████████  (Emphasis added.)  (AR 15994.)

The RFP specified that bidders were required to submit separate technical and price proposals, and that the technical proposals would be evaluated under five factors.  (AR 274-275.) The five technical evaluation factors were (1) mandatory documentation, (2) aircraft

---

[1]  In fact, Croman offered three of its helicopters (N611CK, N612CK and N613CK on each of the 34 line items in the Solicitation.  (Croman Brief at p. 3.)  Croman obviously believed that there were no limitations on the helicopters that could be offered, as long as the helicopters met the minimum requirements, which Croman's did not as to line items 1 through 15.

[2]  Porterville is approximately 75 miles from Fresno, the location of line item 23, awarded to Siller with its much higher capacity helicopter (Siller's payload (amount of water it can carry) is ████████ (AR 11540) while Croman's helicopters have a payload of ████████ of water (AR 4400), meaning Siller can carry over ████ more pounds of water, ████████ as much as Croman, at, as shown below, a lower price per pound).

███████████████████████████████████████████████████████████
███████████████████████████████████████

191.036-1260027.1

performance, (3) safety/risk management, (4) past performance, and (5) organizational experience.  (AR 275.)  The RFP further provided that "[e]valuation factors other than cost or price, when combined, are SIGNIFICANTLY MORE IMPORTANT THAN price in the award decision."  (Emphasis in original.)  (AR 282.)  With respect to price, the RFP provided that each price proposal shall be evaluated to determine its reasonableness and to determine the demonstrated understanding and level of effort needed to successfully perform the services.  (AR 275.)  The Forest Service conducted a price analysis to determine overall price reasonableness and by using a Best Value formula that would compute the amount it would cost to transport a pound of product for the specific helicopter being offered.  (Id.)  Specifically, the RFP stated:

> The best value formula will be used to make trade-off determinations to measure aircraft efficiencies of make and models of helicopters offered.
>
> (c)  Best Value Formula
>
> $D + (F \times H) \div (H \times (L \times P)) = \text{Cost per Pound}$
> $D$ = Average Daily Rate
> $F$ = Flight Rate
> $H$ = Average Daily Flight Hours (2.0)
> $P$ = Payload
> $L$ = Loads Delivered per Hour (6)

(Id.)

The first technical evaluation factor, mandatory documentation, was a pass/fail.  (AR 280.)  The remaining four technical evaluation factors were listed in descending order of importance as follows:  aircraft performance, safety/risk, past performance, and organizational experience.  (AR 280-282.)  Aircraft performance was evaluated based on a single sub-factor, helicopter load calculation.  (AR 281.)  Safety/risk management was evaluated on two sub-factors, accident history and safety management systems.  (Id.)  Past performance was evaluated on four sub-factors:  (i) capable, efficient and effective; (ii) performance conforms to the terms and conditions of contracts; (iii) reasonable and cooperative during performance; and (iv) committed to customer satisfaction.  (Id.)  The final technical factor, organizational experience, was evaluated on the following sub-factors:  (i) management personnel commensurate with size

- 4 -

and complexity of operations; (ii) pilot(s) in command; and (iii) maintenance personnel.  (AR 281-282.)

The Forest Service organized a Technical Evaluation Team ("TET") to evaluate each of the proposals.  (AR 13.)  The TET members had expertise and knowledge of helicopter services and proposed equipment capabilities.  (Id.)  The TET used a "Technical Proposal Evaluation Sheet" to score the proposals received.  (AR 17 and AR 27-28.)  The TET then assigned to each evaluation criterion a final adjective consensus as noted on the evaluation rating sheet based on the following descriptions:

> EXCEPTIONAL:  The proposal is very comprehensive, in-depth, clear and uniformly outstanding in quality.  Consistently high quality performance can be expected.  The proposal, as written, exceeds requirements and demonstrates an exceptional understanding of goals and objectives of the acquisition.  One or more major strengths exist.  No significant weaknesses exist.
>
> ACCEPTABLE:  The proposal meets all minimum requirements and generally is of high quality.  Proposal demonstrates an acceptable understanding of goals and objectives of the acquisition.  There may be both strengths and weaknesses, but the strengths outweigh the weaknesses.  Deficiencies are minor and easily corrected.  Proposal is acceptable as written.  Satisfactory performance can be expected.
>
> NEUTRAL:  Use this rating for historical factors only (Past Performance).  Offeror does not have a history of past performance or information is not available.
>
> MARGINAL:  The proposal fails to meet minimum requirements.  Proposal demonstrates a fair understanding of the goals and objectives of the acquisition.  Weaknesses outbalance any strength that exists.  Weaknesses will be difficult to correct and would require negotiations.
>
> UNACCEPTABLE:  The proposal fails to meet minimum requirements.  Proposal fails to meet an understanding of the goals and objectives of the acquisition.  The proposal has one or more significant weaknesses that will be very difficult or impossible to correct.  Major proposal revision(s) are required for minimum acceptability.
> (AR 24-25.)

The technical evaluations were evaluated prior to evaluation of the price proposals.

(AR 24.)  The lower the adjectival rating, the higher the score because the lower scores reflect

technical superiority.  (AR 16040 and 16043.)  With respect to Croman and Siller Helicopters, the TET adjectival ratings were as follows:

| Bidder | Mandatory Documentation (Pass/Fail) | Aircraft Performance | Safety/Risk Management | Past Performance | Organizational Experience |
|--------|-------------------------------------|---------------------|------------------------|------------------|---------------------------|
| Croman | ████ | ████████ | ███ | █████ | ██████ |
| Siller | ████ | ████████ | ███ | ████ | ██████ |

(AR 15998.)

The TET's evaluation of factors 2 through 5 are set forth in a narrative, explaining the basis for evaluation and the reasoning for the scores of each of the bidders.  (AR 16013-16035.)

With respect to line item 23, Siller's total contract price was ████████ and Croman's total contract price was ████████  (AR 16054.)  However, pursuant to the Best Value formula used to evaluate price and make trade-off determinations, Siller's price per pound was significantly less than Croman's.  (Id.)  Siller's price per pound to transport water to combat fires, as evaluated, ranged from ████████ (awarded contract), while Croman's price per pound to transport water pursuant to the Best Value formula was ████████ (AR 16054.)  The Best Value formula used, as part of its calculation, the payload (amount of water the helicopter can carry).  (AR 275.)  Siller's payload of ████ of water (AR 11540) is more than twice the payload of Croman's ████ of water (AR 4400).[3]

Once the TET had completed its adjectival scoring, a computer optimization model (OM) was developed to arrive at the best possible combination for line item recommendations.  (AR 15993.)  The TET utilized the OM program to assist in providing a recommendation of aircraft for awards.  (AR 15995.)  The OM was designed to analyze the TET consensus adjectival rating, convert the rating to a number, apply the appropriate weight of importance and provide recommendations for the most efficient helicopters, representing the overall best value

---

[3]  Accordingly, Siller's helicopter could deliver water not only at a significantly less expensive price per pound than Croman's, but also, because of its higher capacity (payload), could deliver significantly more water on each flight.

████████████████████████████████████

191.036-1260027.1

for all line items.  (Id.)  The OM model assigned ███ for overall technical adjectival rating, ███

for overall total price and ███ for average price per pound.  Id.

The OM is a multi-objective goal programming model with the overall objective of

determining, for each line item, which aircraft will provide the overall best value to the

Government.  (AR 16040.)  Data regarding each helicopter bid was entered into the OM database

as was the TET adjectival scores for each of the technical factors.  (AR 16040-16041.)  In

addition, pricing data, including the average price per pound (the Best Value formula) was also

included in the OM database.  (AR 16042.)

Siller received the lowest (i.e., best) OM adjectival score at ███ (AR 16043.)  Siller

also had the lowest price per pound for line item 23 (the best value per the formula set forth in

the RFP).  (AR 275 and 16211.)  Accordingly, Siller was awarded line item 23 over Croman,

Rainier, Withrotor and HTS.  (AR 16002.)

On January 3, 2012, Croman filed with the Government Accountability Office ("GAO")

a protest of the award to Siller on line item 23, as well as the award of other line items and

cancellation of four line items, on essentially the same grounds asserted in this protest before the

Court of Federal Claims.  (AR 14518-14545.)  GAO dismissed Croman's protest on January 27,

2012.  (AR 15939-15946.)  The GAO decision held, as to Croman's protest regarding the award

to Siller, that Croman's claim that its costs were lower than Siller's does not state a valid basis for

protest where the solicitation provides that award would be based on technical factors as well as

cost. (AR 15942.)  The GAO also dismissed Croman's claim that the Forest Service improperly

awarded line item 23 to a "heavy" helicopter (Siller) since such a helicopter exceeded the

performance requirements of that line item, because the RFP set minimum performance

requirements and expressly solicited offers of both "heavy" and "medium" helicopters.  (AR

15943.)

After initial award, the Forest Service performed a re-evaluation of the offers, but no

change was made as to the award to Siller on line item 23.  (AR 16211.)

████████████████████████████████████

On May 18, 2012, Croman filed its Supplemental Brief in which it contends that a new solicitation for heavy and medium helicopters ("New RFP") calls for the exact same services that were the subject of the four (4) cancelled line items.  (Croman Supplemental Brief at p. 2). Croman admits that the host base for the four (4) helicopters required by the New RFP is Boise, Idaho, which is a different host base than the bases for the four (4) cancelled line items in the RFP (No. 21 Orland; No. 22 Porterville, No. 27 Oakridge and No. 34 Alturas).  (Croman Supplemental Brief at p. 2 and AR 15994.)

## IV.
## CROMAN HAS FAILED TO PROVE THAT IT
## HAS STANDING TO PURSUE THE PROTEST

The Tucker Act, 28 U.S.C. § 1491(b)(1), confers jurisdiction on the court:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).  "The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]."  Myers Investigating & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed.Cir. 2002).  A plaintiff must establish, as a threshold matter, standing by showing that it is a "interested party" within the court's section 1491(b)(1) bid protest jurisdiction.  Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed.Cir. 2006); Info. Tech & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed.Cir. 2003).

The term "interested party" is construed in accordance with the Competition in Contracting Act ("CICA"),  31 U.S.C. § 3551-56; Am. Fed'n of Gov't Employees, AFL-CIO v. United States, 258 F.3d 1294, 1302 (Fed.Cir. 2001) (specifically finding that the broad standing language of the Administrative Procedure Act ("APA") is not applicable to determine who is an interested party with standing under 28 U.S.C. § 1491(b)(1)).

To meet its burden to show standing as an interested party, a plaintiff must "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite economic interest.  Rex,

supra, 448 F.3d at 1307 (citing Myers Investigative, supra, 275 F.3d at 1370).  A plaintiff does

not establish a direct economic interest unless it shows "that there was a 'substantial chance' it

would have received the contract award but for the alleged error in the procurement process."

Info. Tech, supra, 316 F.3d at 1319.  In the absence of a plaintiff meeting its burden of proving

standing, the court lacks subject matter jurisdiction over the protest "regardless of whether the

Government's conduct was arbitrary, capricious, or contrary to law."  MED Trends, Inc. v.

United States, 101 Fed.Cl. 638, 642 (2011).

**A.     Croman Is  Not An Interested Party Because It Has Failed To Show A Substantial**
**Chance Of Winning The Award**

Croman has not met its burden of proving that it has a substantial chance of receiving the

contract but for an alleged error in the procurement process.  Croman gives only lip service to the

standing requirements starting at the bottom of page 17 through the middle of page 18 of its

brief.  Croman's only arguments as to why it, as opposed to the other bidders, should be awarded

line item 23 is because two of the other bidders' (Helicopter Transportation, Inc. and

Construction Helicopters) total cost is too high and the helicopter proposed by Rainier Heli

International was awarded contract line item 16 and, therefore, is not available.  Croman's

arguments are without merit.

First, Croman's claims regarding Helicopter Transportation and Construction Helicopters

rely on the baseless theme of its motion:  the overly simplistic argument that because its total

price was less than the other bidders, the Forest Service  should have awarded Croman line item

23.  However, Croman provides no analysis that it should have received the award over the other

bidders, since price is not the only evaluation factor, and, in fact, the RFP unequivocally states

that the technical factors are significantly more important than price.  Rainier's and Helicopter

Transport Services' prices per pound (i.e., the Best Value formula) were less than Croman's price

per pound to transport water, as was Siller's, and both had better OM adjectival ratings than

Croman, albeit not as good as Siller's.  (AR 16054.)  Croman fails to show why it, and not either

Rainer or Helicopter Transport Services, should be awarded line item 23 if its arguments about the Government's evaluation are valid.

In addition, Croman completely ignores the bid of Withrotor Aviation, whose total cost was very similar to the total cost of Croman.  (Id.)  Also, Withrotor's OM adjectival rating was very similar to Croman's.  (Id.)  Croman has made no showing whatsoever that its bid should be selected over Withrotor's.

Moreover, that Rainier was selected for line item 16 is completely irrelevant as to whether Croman has a substantial chance of being selected for line item 23, even if Croman's allegations are correct.  The Government did not determine awards in numerical order.  (AR 16044.)  Accordingly, Croman would have to show that if line item 23 was available (not awarded to Siller), Rainier could not be awarded line item 23 and some other bidder awarded line item 16.

It remains that Croman has failed to prove that it had a substantial chance of receiving the award for line item 23.  Without meeting its burden of proof on this issue, Croman has no standing and its protest should be dismissed.

**V.**
**STANDARD OF REVIEW**

A protestant has the burden of proving its protest in two steps.  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed.Cir. 2005).  The protestant must first demonstrate error, by showing that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law.  Id.  The protestant must next prove that the error was prejudicial.  Id.

**1.       The Protestant Must First Prove Error**

The court decides a post-award bid protest action under the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"); 28 U.S.C. § 1491(b)(4).  Pursuant to the APA, an agency's decision shall be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A) (2006); Bannum,

191.036-1260027.1

supra, 404 F.3d. at 1351; Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed.Cir. 2004); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed.Cir. 2001).  In determining a protest under the arbitrary and capricious standard of review, the court must sustain an agency decision if it has a rational basis.  Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

The protestant "bears a 'heavy burden' to show that an award decision is irrational." Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1351 (Fed.Cir. 2004) (citations omitted).  "The arbitrary and capricious standard applicable here is highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed.Cir. 2000), citing Bowman Transp., Inc. v. Ark-Best Freight Sys., Inc., 419 U.S. 281, 285 (1984).  Where the contract is awarded on a "best value basis," as in this case, the Government is afforded "even greater discretion than if the contract were to have been awarded on the basis of cost alone." Galen Med. Assoc., Inc. v. United States, 369 F.3d 1324, 1330 (Fed.Cir. 2004) (citing E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (FedCir. 1996) ("Procurement officials have substantial discretion to determine which proposal represents the best value for the government")).

The question for the court is not whether the agency is correct or whether the court would have reached the same conclusion as the agency, but rather whether there was a reasonable basis for the agency's actions.  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed.Cir. 1999) ("if the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion" (quoting M. Steinthal & Co.v. Seamans, 455 F.2d 1289, 1301 (D.C.Cir. 1971)).  An agency's decision will be upheld so long as it was not "clearly erroneous" and there was a rational basis for the decision. Gulf Group Inc. v. United States, 61 Fed.Cl. 338, 353 (2004); see also International Resource Recovery, Inc. v. United States, 64 Fed.Cl. 150, 161 (2005) (holding that the Army's evaluation of bidders was not clearly erroneous since there was some evidence that indicated it would meet the requirements sought).

191.036-1260027.1

### 2.      The Protestant Must Prove Prejudice

A protestant must demonstrate both that an error occurred and that the error was prejudicial in order to prevail in a bid protest.  Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed.Cir. 1996).  In order to prevail on a post-award bid protest, "the plaintiff must demonstrate 'substantial prejudice' by showing that there was a 'substantial chance' it would have been awarded the contract but for the agency's error."  Weeks Marine, Inc. v. United States, 79 Fed.Cl. 22, 35 (2007) (quoting Bannum, 404 F.3d at 1353), aff'd in relevant part, 575 F.3d 1352 (Fed.Cir. 2009).

## VI.
## ARGUMENT

### A.      Croman Has Failed To Meet Its Heavy Burden Of Proving That The Government Acted Irrationally

The Forest Service's decision to award line item 23 of the RFP to Siller Helicopters was not arbitrary, capricious or an abuse of discretion, or contrary to law.  In fact, there was a rational basis for the Forest Service's decision.  Specifically, the Forest Service first engaged in a very detailed evaluation process of the technical factors.  Notably, the RFP expressly stated that the technical score would be "SIGNIFICANTLY MORE IMPORTANT THAN price in the award decision."  (Emphasis in original.)  (AR 275.)

Moreover, the Forest Service evaluated price as a factor in making the award (AR 275 and 16042) and there was a rational basis for the Forest Service's award to Siller Helicopters when taking price into account.  While Siller Helicopters' total cost was, in fact, higher than Croman's, Croman conveniently makes no mention in its motion of the Best Value factor calculation that the Forest Service determined, and to which Croman has stated no objection, whereby Siller had a significantly lower price per pound to carry water to forest fires.

Croman also argues, incorrectly, that awarding line item 23 to Croman rather than Siller Helicopters will reduce the Forest Service's costs in such an amount that the Forest Service could

award "at least one of the cancelled line items."[4]  Again, Croman ignores that, in actuality,
Siller's cost to transport water (and transporting water to forest fires is really the purpose of this
procurement) will cost the Government less than if Croman had been awarded both line item 23
and one of the cancelled line items.  Porterville, California, one of the locations of the cancelled
line items, is only 75 miles away from Fresno, the location of line item 23 awarded to Siller.  By
awarding to Siller, with its ███ payload (capacity to carry water), one helicopter (Siller's
helicopter) can cover the Porterville and Fresno areas, rather than two helicopters being used
than if Croman (with its ███ payload) had been awarded both areas.  The award to Siller of
line item 23 will not only provide a greater capacity to fight fires (substantially more than twice
the amount of water can be transported in one flight), but also at a cheaper cost per pound of
water.  Accordingly, Croman's continued claim that it would save the Government money is just
flat wrong.

Of course, the cost discussion above does not even take into account the significantly
higher technical score Siller Helicopters received and that the RFP unequivocally stated technical
scores are significantly more important than price in evaluating the best value to the
Government.

Siller Helicopters asserts that Croman's continued claim that Siller's higher total cost
justifies granting Croman's protest is nothing but a red herring and fails to take into account all of
the factors identified by the Forest Service in making its award.  Moreover, the Forest Service
has explained in detail its evaluation procedures in awarding scores to proposals, including the
OM procedure which confirmed the ratings given to the bidders, taking into account the
technical scores and price.  (AR 15992-16212.)

---

[4]  Croman, by virtue of its Supplemental Brief, concedes this argument has no merit because,
if one accepts the premise of Croman's Supplemental Brief that the New RFP "calls for the
exact same services and equipment that were the subject" of the cancelled line items, then the
Government does not need to award line item 23 to Croman in order to have funding to award
one of the cancelled line items.

Croman's reliance on the Forest Service's █████████████████████ ████████ for line items 1-15 is also misplaced because it makes an apples to oranges comparison.  The Forest Service ████████████████████████████ ███████████████████████████████████████████████████████ ████████████████ (AR 15994.)  However, Siller's helicopter chosen for line item 23 is not a similar performing aircraft to Croman's.  Remarkably, Croman argues, in essence, that its helicopter and Siller's are "similar performing aircraft" and, therefore, Siller's higher total cost requires disqualification ████████████████████████, but, <u>on the same page of its brief</u> (page 17), argues that Siller did not understand the procurement because it offered a helicopter with technical capabilities and capacity much higher than Croman's and the minimum requirements of the RFP.  Siller's helicopter, in fact, is superior technically and does have a much higher capacity, in that it can carry much more water and at a cheaper cost per pound of water.  The Forest Service, ████████████████████████████ determined the additional cost was not justified when the cost for "similar performing aircraft" was lower.  For line item 23, however, the Forest Service was able to obtain a much higher performing aircraft (Siller's) and only had to make one award in the Fresno/Porterville area in doing so, thereby reducing costs.

Likewise, Croman's argument that "Siller lacked the requisite understanding of the level of effort needed to successfully perform the services described in item 23" (page 17 of Croman's brief) has no basis in fact and is not supported by the administrative record.  Siller certainly understood the level of effort needed to perform the services successfully in that it knew its higher capacity helicopter would provide greater service to the Forest Service in fighting forest fires at a less expensive price per pound of water.  The RFP was very clear that the requirements for line items 1 through 15 and 16 through 34 were "minimum" requirements.  There was no limitation on a bidder submitting a helicopter for any of the line items so long as it met those minimum requirements.  In fact, as shown by the evaluation of the TET, and the lower cost per

pound to deliver water, Siller Helicopters is providing a much better value than Croman, since the Government is receiving a technically superior aircraft which can cover a greater area and carry more water at a less expensive price per pound than could Croman's.

Moreover, at no time prior to submitting its bid did Croman ever object that only certain aircraft should be permitted to submit bids for line items 16 - 34 (i.e., only those that were medium aircraft).  Accordingly, Croman's argument with respect to Siller submitting its bid using a heavy duty aircraft was waived by Croman when it submitted its bid.  See, e.g., Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed.Cir. 2007).

Notably, Croman believed that there was nothing wrong with it submitting multiple aircraft for items 1-34 because Croman submitted its N611CK, N612CK and N613CK helicopters for all of the line items even though that aircraft clearly did not meet the performance requirements for line items 1-15.  Perhaps Croman "lacked the requisite understanding of the level of effort needed to perform the services."

The cases cited by Croman do not support its position.  In Serco Inc. v. United States, 81 Fed.Cl. 463 (2008), the awardee's cost to the government was, without question, significantly higher than that of the protesting party.  In the present matter, however, Siller's cost per pound to transport water is significantly less than that of Croman's, for a much higher capacity helicopter that can cover a greater geographical area.  Therefore, it is not simply a matter, as in Serco, (81 Fed. Cl. at 498) of the Government comparing the difference between a bidder's technical superiority and the unquestioned premium paid to obtain that superiority. In this procurement, there are multiple cost factors, such as the cost per pound, which is the Best Value calculation used to make a trade-off determination as set forth in the RFP, which were part of the evaluation process used by the Forest Service.

Moreover, unlike in Serco, where only a conclusionary analysis was provided (81 Fed. Cl. at 499) the Forest Service provided a six-page analysis of the tradeoff (Attachment 3, AR 16040 to 16045), in addition to the trade-off determination using the Best Value formula, other

191.036-1260027.1

discussions throughout the source selection documentation, and a three-page chart (Attachment 7, AR 16210 to16212) that explains how technical scores, total cost and price per pound were inputted into the OM analysis.  As noted in NEQ, LLC v. United States, 88 Fed.Cl. 38 (2009):

> [w]hile plaintiff suggests that the trade-off discussion here contains the sort of "conclusory statements, devoid of any substantive content" that have been found lacking in other cases, *see Serco Inc. v. United States*, 81 Fed.Cl. 463, 497 (2008), that is not the case. Rather than summarily concluding that a premium should be paid, the trade-off discussion here ran a half dozen pages, exhaustively relying on the charts and statistics recounted in the background segment above.  That plaintiff disagrees with the agency's rationale for concluding that [the intended awardee's] technical strengths . . . warranted paying a $2.2 million price premium is, of course, quite irrelevant.  Rather, this court's role is to "ensure that the contracting officer examined the relevant data and articulated a 'rational connection between the facts found and the choice made.'

NEQ, LLC v. United States, 88 Fed.Cl. at 51.

Likewise, the Government, through its exhaustive analysis and the OM model and the tables and charts representing that analysis, has shown a rational connection between the facts found and the choice made.  Certainly, Croman has not met its "significant burden of showing error" to overcome the court's "considerable deference to an agency's best value decision in trading off price with other factors".  Serco v. United States, 81 Fed.Cl. at 496.  Not only is Croman's analysis mistaken since it completely ignores the best value analysis based on price per pound as clearly articulated in the RFP, and which the Forest Service relied upon in its trade-off analysis as documented in Attachment 7 to the source selection document (AR 16210-16212), but it also completely misstates the analysis performed by the Forest Service.

On page 26 of its brief, Croman states "nothing in the AR contains any information whatsoever as to why any team assigned any adjectival ratings that it did".  This statement simply is not true.  Detailed information is provided in the AR as to the evaluation factors to be used in determining adjectival ratings (AR 22-26), and the AR contains a 23-page narrative of the reasons for the bidders' technical scores.  (AR 16013-16035).

Croman is also wrong that the composite adjectival rating was "based on the average of averages of mere (unexplained) one-word opinions." (Croman Brief, p. 27.)  Again, there is a 23-page narrative explaining the ratings.  (Id.)  Croman continues its incorrect statements regarding the RFP and evaluation process when it states "nowhere in the RFP, or elsewhere, was there any indication of what the team was specifically to evaluate or what each adjectival rating being assigned actually represented." (Croman Brief, p. 27.)  Croman completely ignores the Forest Service's source selection plan starting on AR 12.  The Forest Service very clearly instructs the TET as to the evaluation criteria in order to determine the collective adjectival assessment.  (AR 24.)  These ratings include exceptional, acceptable, neutral, marginal, and unacceptable.  (Id.)  The source selection plan at AR 25 goes into even further detail as to the evaluation process and guidelines.

Croman then incorrectly states that "the AR does not contain or even reference any such definitions of the adjectival ratings".  (Croman Brief, p. 27.)  Again, see the AR at 24 and 25 where the bases for the adjectival ratings are clearly and in great detail identified together with the evaluation process to be followed.  Croman's failure to understand the process is mystifying given the clear and unambiguous requirements set forth in the administrative record.  Accordingly, "the definitions of the adjectival ratings to be assigned by the individuals whose options are being surveyed" (Croman brief p. 28) were clearly provided to all of the TET.  There is no question that the compilation of the opinions of the members of the various teams reliably indicates distinctions between the offerors, since the evaluation criteria for the adjectival ratings was unambiguous as set forth in the administrative record.

Croman states that the opinions of the teams were not "supplemented by narratives, notes or even annotations that provided any insight into what the teams' thought processes were in assigning any adjectival rating." (Croman Brief, p. 28.)  The AR at 16013 to 16035 provides great detail as to the analysis for each bidder of the technical portions of the procurement.  Aircraft performance, safety/risk management system, past performance, and organizational

- 17 -

experience and the reasons for ratings assigned to each bidder are summarized in detail in the 23-page narrative.  (AR 16018-16035.)  Overall, Croman's argument regarding the basis for the adjectival scores and the evaluation of the proposals is based on an incorrect understanding of the data as set forth in the administrative record.  Accordingly, its remaining analysis as to how that data was used in the OM trade-off comparison is materially flawed and without any relevant basis.

**B.      Croman Is Not Prejudiced By Any Conduct Of The Government**

The burden is on the protestant to demonstrate that it would have a substantial chance of winning the procurement.  See Am. Fed'n of Gov't Employees, AFL-CIO v. United States, 258 F.3d 1294, 1302.  A protestant must show there must have been a reasonable likelihood that it would have won the contract.  Mobile Medical Int'l Corp. v. United States, 95 Fed.Cl. 706, 729 (2010).  Croman has completely failed to show that it was prejudiced because there was a substantial chance that it would have received the contract award but for any alleged error by the Forest Service.  Croman states, without any support, that it was prejudiced.  Conclusory statements of prejudice without any analysis or support are not sufficient.

As noted in section IV above, there were several other bidders who could receive the award of line item 23 even if Croman's claims are correct.  Croman argues nothing other than its lower cost, which not only is incorrect because of its failure to acknowledge the Best Value formula and that Siller can cover the geographical areas of line item 22 (cancelled) and line item 23, but also because other bidders (Rainier and Withrow) had total costs less than or similar to Croman's.

Without meeting its burden of proving prejudice, Croman's protest fails.

**C.      The Court Should Not Issue Permanent Injunctive Relief**

As shown above, Croman has not succeeded in the merits of its protest and, therefore, its request for permanent injunctive relief should be denied on that basis alone.  Croman's entire theme (that because its total cost is less than Siller's, the Forest Service had no rational basis to

191.036-1260027.1

award line item 23 to Siller) is meritless, given the other cost factors included in the Forest Service's evaluation analysis (the Best Value formula) and the higher technical scores awarded to Siller.  In addition, Croman does not satisfy the remaining standards in order for injunctive relief to be granted.

In order to grant a permanent injunction, the court should consider whether "(1) the plaintiff has succeeded in the merits of the case, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) it is in the public interest to grant injunctive relief.  PGBA, LLC v. United States, 389 F.3d 1219, 1228-1229.

**1.      Croman Does Not Meet The Requirement Of Suffering Irreparable Harm**

In order to show irreparable injury if injunctive relief is not granted, the plaintiff must be "a contender for award." Space Exploration Technologies Corp. v. United States, 68 Fed.Cl. 1, 8 (2005).  As shown above, Croman has failed to show that it has any chance, let alone a substantial chance, to be awarded the contract.  Croman cannot suffer irreparable harm if it cannot prove that it had a substantial chance to be awarded the contract.  Accordingly, there is no lost opportunity and, therefore, no irreparable harm.

**2.      The Balance Of Harm Tips In Favor Of Denying Injunctive Relief**

Balancing the harms requires the court to compare the damage that the protestor will suffer without an injunction against the harm the Government and the awardee will suffer if a permanent injunction is issued.  Axiom Resource Management, Inc. v. United States, 80 Fed.Cl. 530, 536 (2008), reversed on other grounds, 564 F.3d 1374 (Fed.Cir. 2009) (awardee's commencement of performance of contract "mitigates against the issuance of injunctive relief").

The balance of the hardships does not favor Croman.  If an injunction is granted as to performance of line item 23 by Siller, an entire area in California will not be covered by a helicopter service to bring water to forest fires.  The Siller helicopter, as admitted and argued by Croman, is much larger and can cover a greater area than Croman's.  If Siller's helicopter is

not available, together with, even more importantly, the cancellation of the contract in Porterville, an entire area in California will not have helicopter service.  Moreover, for the same reason, if Croman was awarded line item 23, because of its ███████ capacity of Siller's helicopter, it could not cover the entire area required.  Accordingly, the Forest Service would be greatly harmed if the injunction was issued. Croman has cited to no evidence in the Administrative Record to the contrary.

> **3.      The Public Interest Weighs In Favor Of Denying Injunctive Relief**

For the same reason, the public interest weighs in favor of denying the injunctive relief requested by Croman.  The public interest would be better served by having an appropriately-sized helicopter handle the firefighting needs of Central California.  By granting the injunction, the public interest will suffer, since Siller's helicopter, with its larger capacity, will not be available to carry water to forest fires in the Fresno/Porterville area.  Again, the same reasoning would apply if Croman's helicopter, ███████ the capacity of Siller's, was awarded line item 23 (and, if Croman were awarded line items 22 and 23, it would be at a much greater cost, both total and per pound, than using just one Siller helicopter).

**VII.**
**<u>CONCLUSION</u>**

Croman has not shown that it has standing to maintain this protest.  Most importantly, Croman has not proven that the Government acted irrationally in awarding line item 23 to Siller Helicopters.  Accordingly, Siller Helicopters requests the court to deny Croman's protest and grant Siller Helicopters' cross-motion for judgment on the administrative record.

Dated: June 6, 2012                MURPHY AUSTIN ADAMS SCHOENFELD LLP


                                   By: s/ V. Blair Shahbazian
                                   V. BLAIR SHAHBAZIAN

                                   Murphy Austin Adams Schoenfeld LLP
                                   304 "S" Street
                                   Sacramento, CA  95811

                                   Telephone:      (916) 446-2300
                                   Facsimile:      (916) 503-4000
                                   Email:  bshahbazian@murphyaustin.com

                                   Attorneys for Defendant-Intervenor
                                   SILLER HELICOPTERS, INC.

191.036-1260027.1