**Redacted Version**

**No. 12-75C**
**(Judge G. Miller)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

CROMAN CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

MOUNTAIN WEST HELICOPTERS, LLC,
COLUMBIA HELICOPTERS, INC., and
SILLER HELICOPTERS, INC.,

Defendant-Intervenors.

---

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT**
**MATTER JURISDICTION AND CROSS-MOTION FOR JUDGMENT UPON**
**THE ADMINISTRATIVE RECORD AND DEFENDANT'S MOTION TO STRIKE**

---

STUART F. DELERY
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

SCOTT D. AUSTIN
Assistant Director

OF COUNSEL
ELIN M. DUGAN
Senior Counsel
Department of Agriculture
Office of the General Counsel
General Law And Research Division
1400 Independence Ave, SW
Room 3311-S

RUSSELL J. UPTON
Trial Attorney
Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station

Washington, D.C. 20250                    Washington, D.C. 20044
Telephone:  (202) 720-4978                Telephone:  (202) 305-3634
Facsimile:  (202) 720-5837                Facsimile:  (202) 514-7969
E-mail:  Elin.Dugan@ogc.usda.gov          E-mail:  Russell.J.Upton@usdoj.gov

July 3, 2012                              Attorneys for Defendant

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... v

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND
CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD
AND DEFENDANT'S MOTION TO STRIKE ............................................................. 1

   I.     Croman's Protest Is Moot .................................................................. 3

   II.    Croman Lacks Standing To Challenge The Corrective Action ................................. 7

   III.   Croman Has Waived Its Right To Challenge The Awards ........................................ 10

   IV.   Croman Has Abandoned Its Argument Concerning The Four Canceled CLINs........ 13

   V.    The Awards For CLINs 17, 23, 28-30, And 32-33 Were Not Arbitrary And
        Capricious, An Abuse Of Discretion, Or Otherwise Not In Accordance With
        Law ........................................................................................................ 15

        A.   Croman Has Yet To Allege Or Support The Unreasonable Of The Award
             Decisions For CLINs 17, 28-30, And 32-33........................................... 15

        B.   A Proper Tradeoff Analysis Was Performed ........................................ 17

        C.   Croman's Revised Argument That Heavy-Lift Helicopters Should Not
             Have Been Permitted To Compete For CLIN 23 Is Erroneous ........................... 19

   VI.   Croman's Two New Claims Of False Precision Are Untimely And, In Any
        Event, Either There Was No Error Or Any Error Did Not Prejudice Croman .......... 22

        A.   Croman Has Waived Its New "False Precision" Arguments ................................ 23

        B.   Any Inaccurate Assignment By The Forest Service Of A 'Marginal'
             Rating To Croman's Aircraft Did Not Affect 'Virtually Every' Numerical
             Rating, And Resulted In No Prejudice To Croman .............................. 25

        C.   Croman's New Argument That The Forest Service Never Performed A
             Re-Evaluation Of The Past Performance And Organizational Experience
             Factors Is Erroneous ......................................................................... 28

   VII.  Croman Is Not Entitled To The Injunctive Relief It Requests.................................... 29

A. Croman Has Fundamentally Altered Its Requested Injunctive Relief And Implicitly Conceded That The Court Cannot Direct A Contract Award To It ............................................................................................................... 29

B. Croman Is Not Entitled To The Altered Injunctive Relief It Requests ................ 31

    1. Croman's Failure Upon The Merits Remains Dispositive ....................... 32

    2. Croman Has Not Been Irreparably Harmed .............................................. 32

    3. The Balance Of Harms Does Not Favor Croman .................................... 33

    4. An Injunction Is Not In The Public's Interest ........................................... 34

VIII. The Court Should Strike Attachment 1 To Croman's Response Brief And Related Portions Of That Brief Because Its Inclusion In The Administrative Record Is Not Necessary For Effective Judicial Review ........................................... 35

CONCLUSION ................................................................................................................. 37

## TABLE OF AUTHORITIES

## CASES

*Academy Facilities Mgmt. v. United States,*
  87 Fed. Cl. 441 (2009) ............................................................................ 29, 30

*Alfa Laval Separation, Inc. v. United States,*
  175 F.3d 1365 (Fed. Cir. 1999) ....................................................................... 7

*Am. Fed'n of Gov't Employees v. United States,*
  258 F.3d 1294 (Fed. Cir. 2001) ....................................................................... 7

*Am. Signature, Inc. v. United States,*
  598 F.3d 816 (Fed. Cir. 2010) ....................................................................... 35

*Axiom Resource Management, Inc. v. United States,*
  564 F.3d 1374 (Fed. Cir. 2009) ..................................................................... 36

*Banknote Corp. of America v. United States,*
  56 Fed. Cl. 377 (2003) ................................................................................. 16

*Bayfirst Solutions, LLC v. United States,*
  102 Fed. Cl. 677 (2012) ............................................................................... 32

*Blue & Gold Fleet v. United States,*
  492 F.3d 1308 (Fed. Cir. 2007) ..................................................................... 12

*Brooks Range Contract Services, Inc. v. United States,*
  101 Fed. Cl. 699 (2011) ........................................................................ passim

*California Industrial Facilities Resources, Inc. v. United States,*
  Docket No. 12-148C (Fed. Cl. May 7, 2012) ................................................ 15

*Carahsoft Tech. Corp. v. United States,*
  86 Fed. Cl. 325 (2009) ................................................................................. 29

*CCL Serv. Corp. v. United States,*
  43 Fed. Cl. 680 (1999) ................................................................................. 31

*Chapman Law Firm Co. v. United States,*
  490 F.3d 934 (Fed. Cir. 2007) ..................................................................... 3, 4

*Chenega Management, LLC. v. United States,*
  96 Fed. Cl. 556 n.25 (2010) ......................................................................... 23

*Citizens to Preserve Overton Park v. Volpe*,
 401 U.S. 402 (1971) ............................................................................................ 36

*Contracting Consulting Engineering LLC v. United States*,
 103 Fed. Cl. 706 (2012) .................................................................................... 35

*Contracting, Consulting, Engineering LLC v. United States*,
 2012 WL 1278042 (Fed. Cl. Apr. 16, 2012) .................................................... 32

*DCS Corp. v. United States*,
 96 Fed. Cl. 167 (2010) ................................................................................. 13, 14

*Dow Elec., Inc. v. United States*,
 98 Fed. Cl. 688 (2011) ........................................................................................ 7

*eBay, Inc. v. MercExchange, L.L.C.*,
 547 U.S. 388 (2006) ........................................................................................... 33

*Florida Power & Light v. Lorion*,
 470 U.S. 729 (1985) ........................................................................................... 36

*Furniture by Thurston v. United States*,
 103 Fed. Cl. 505 (2012) .................................................................................... 35

*GTA Containers, Inc. v. United States*,
 2012 WL 562432 (Feb. 22, 2012) ...................................................................... 5

*Impresa Construzioni Geom. Domenico Garufi v. United States*,
 238 F.3d 1324 (Fed. Cir. 2001) ...................................................................... 7, 8

*Information Technology & Applications Corp. v. United States*,
 316 F.3d 1312 (Fed. Cir. 2003) .................................................................. 7, 8, 9

*Ironclad/EEI v. United States*,
 78 Fed. Cl. 351 (2007) ................................................................................. 14, 15

*Labatt Food Service, Inc. v. United States*,
 577 F.3d 1375 (Fed. Cir. 2009) ............................................................. 26, 27, 28

*Magnum Opus Technologies, Inc. v. United States*,
 94 Fed. Cl. 512 (2010) ........................................................................................ 5

*MED Trends, Inc. v. United States*,
 101 Fed. Cl. 638 (2011) ............................................................................... 26, 27

*Minor Metals, Inc. v. United States*,
 38 Fed. Cl. 379 (1997) ...................................................................................... 33

vi

*Monsanto Co. v. Geertson Seed Farms*,
    130 S. Ct. 2743 (2010).................................................................................... 33

*Novosteel SA v. United States*,
    284 F.3d 1261 (Fed. Cir. 2002) ............................................................... 15, 23

*Orion Technology, Inc. v. United States*,
    102 Fed. Cl. 218 n.19 (2011)........................................................................ 14

*Parcel 49C Ltd. Partnership v. United States*,
    31 F.3d 1147 (Fed. Cir. 1994) ...................................................................... 31

*PGBA, LLC v. United States*,
    389 F.3d 1219 (Fed. Cir. 2004) .................................................................... 29

*PGBA, LLC v. United States*,
    60 Fed. Cl 196 (Fed. Cl. 2004). ................................................................... 32

*SmithKline Beecham Corp. v. Apotex Corp.*,
    439 F.3d 1312 (Fed. Cir. 2006) .................................................................... 23

*Statistica, Inc. v. Christopher*,
    102 F.3d 1577 (Fed. Cir. 1996) .................................................................... 25

*Survival Systems, USA, Inc. v. United States*,
    102 Fed. Cl. 255 (2011).................................................................................. 23

*T & M Distributors, Inc. v. United States*,
    185 F.3d 1279 (Fed. Cir. 1999) .................................................................... 29

*Technical Innovation, Inc. v. United States*,
    93 Fed. Cl. 276 (2010)........................................................................... 3, 6, 7

*Zenith Radio Corp. v. United States*,
    710 F.2d 806 (Fed. Cir. 1983) ...................................................................... 33

## STATUTES AND REGULATIONS

5 U.S.C. § 706................................................................................................... 36

28 U.S.C. § 1491(b)(1) ....................................................................................... 4

48 C.F.R. § 15.308............................................................................................. 31

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |  |
|---|---|---|
| CROMAN CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | No. 12-75C |
| Defendant, | ) | (Judge George Miller) |
| and | ) | |
| MOUNTAIN WEST HELICOPTERS, LLC, COLUMBIA HELICOPTERS, INC., SILLER HELICOPTERS, INC., | ) | |
| Defendant-Intervenors. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION AND CROSS-MOTION FOR JUDGMENT UPON
THE ADMINISTRATIVE RECORD AND DEFENDANT'S MOTION TO STRIKE**

Defendant, the United States, hereby replies to plaintiff, Croman Corporation's (Croman) response to (1) our motion to dismiss for lack of subject matter jurisdiction and (2) our cross-motion for judgment upon the administrative record (Croman's response). In addition, pursuant to Rules 7 and 12(f) of the Rules of the United States Court of Federal Claims (RCFC), we move to strike Attachment 1 to Croman's response brief and those portions of Croman's response brief related to Attachment 1.

Croman's protest of the initial, pre-corrective action[1] procurement is moot because of the corrective action undertaken by the United States Department of Agriculture, Forest Service, National Interagency Fire Center (Forest Service). Moreover, Croman has not demonstrated that it has standing to challenge the Forest Service's awards nor rebutted our demonstration that it

---

[1] Our references to the Forest Service's "corrective action" encompass the re-evaluation process as well as the award decisions that followed the corrective action process.

waived its opportunity to challenge the Forest Service's evaluation scheme by not protesting the solicitation pre-award.  Additionally, Croman has not rebutted our demonstration that it abandoned the claim from its complaint that the cancellation of a portion of the solicitation was pretextual or improper.  Furthermore, Croman has failed to demonstrate that the Forest Service's partial cancellation of the solicitation, its re-evaluation of Croman's bid, and its subsequent award decisions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Finally, Croman's newly-minted argument that the Forest Service distorted the difference between aircraft in evaluating the Aircraft Performance factor is not only greatly exaggerated, but is waived because this argument was not made in its opening brief and fails because Croman was not prejudiced by the alleged distortion.  Also waived, having been raised for the first time in Croman's response brief, is the spurious claim that the Forest Service never actually re-evaluated proposals, as it said it would, and as the administrative record proves it did. Croman remains unentitled to any of the injunctive relief it requests.

Additionally, Croman again attempts, improperly, to supplement the administrative record with information concerning the procurement under Solicitation No. AG-024B-S-12-9025 (2012 RFP), this time without moving for leave to do so first.  For the same reasons the Court previously denied Croman's motion to supplement the administrative record with the 2012 RFP, the Court should strike Attachment 1 to Croman's response brief from the record as well as the related portions of Croman's response brief (which solely concern the 2012 RFP procurement).

Ultimately, Croman's protest is about a company frustrated that its technically inferior, but less expensive, helicopters were not selected over technically superior, but more expensive, helicopters in a procurement that, from its onset, explicitly and significantly placed emphasis upon technical ability over price.  Croman refuses to recognize the reality of the competitive environment in which it operates.  Croman's complaint should be dismissed for lack of subject

2

matter jurisdiction; in the alternative, Croman's motion for judgment upon the administrative record should be denied and the Government's cross-motion for judgment upon the administrative record should be granted.  Finally, the Court should deny the injunctive relief that Croman requests and strike Attachment 1 and related portions of Croman's response.

## I.   <u>Croman's Protest Is Moot</u>

The 2011 RFP, the corrective action, and the 2012 RFP are three separate procurements. Croman's complaint, filed February 3, 2012, over a month before the corrective action was completed on March 15, 2012, and over three months before the issuance of the 2012 RFP on May 14, 2012, challenged only the original 2011 RFP awards and the cancellation of the four CLINs in that RFP.  Croman's complaint could not have challenged the corrective action or the 2012 RFP because, on February 3, 2012, those events had not yet taken place.  The corrective action replaced the 2011 RFP award decisions.  *See Technical Innovation, Inc. v. United States*, 93 Fed. Cl. 276, 279 (2010) (calling "defunct" the originally protested evaluation and awards, which the Air Force decided to re-procure under a different solicitation).  Thus, the awards Croman is protesting no longer exist making Croman's protest moot.

Croman's response ignores this chronology of events and the effect of the corrective action.  Croman improperly attempts to challenge all three procurements.  Croman argues, Pl. Resp. 1-2, that *Chapman Law Firm Co. v. United States*, 490 F.3d 934 (Fed. Cir. 2007) suggests Croman's protest is not moot.  However, as we demonstrated, this Court in *Chapman* specifically held that dismissal for mootness is appropriate "[w]hen, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue . . . ."  *Id.* at 940; Def. Mot. 22.  As we demonstrated, the "questions originally in controversy" "are no longer at issue" because the agency took corrective action after the December 16, 2011 award decisions Croman protested.  Thus, Croman

is protesting award decisions that no longer exist, as illustrated by, among other things, its reliance upon documents from the original procurement that are irrelevant following the corrective action.  Def. Mot. 23 and n.11, 42-43.  Croman claims the "relief sought" is "the opportunity to compete in a fair procurement process [for line items] 17, 23, 28, 29, 30, 32, and 33 as well as the four cancelled items . . . of [the 2011 RFP] based on a proper evaluation and appropriate tradeoff . . . ."  Pl. Resp. 1-2.  Croman argues that the "questions 'originally in controversy' are still at issue . . . ," and that those "questions" relate to the Forest Service's evaluation and tradeoff decisions "in the initial procurement *and as 'corrected'*," as well as the Forest Service's decision to cancel four CLINs from the 2011 RFP.  *Id.* (emphasis added).

But this Court's jurisdiction over Croman's protest is derived from Croman's allegations in its complaint.  28 U.S.C. § 1491(b)(1).  Croman did not question the corrective action in its complaint because the corrective action had not yet been completed.  Croman questioned solely the 2011 RFP awards and the cancelation of the four CLINs.  The 2011 RFP awards no longer exist, and Croman has abandoned any argument that the cancelation of the four CLINs was improper.  *See* Def. Mot. 32.  Thus, the "relief sought" by Croman in its complaint and the "questions originally in controversy" are "no longer at issue."  *Chapman*, 490 F.3d at 940.

Croman attempts to blur the distinctions between three separate procurements in analyzing the language of section 1491(b)(1).  Pl. Resp. 2.  Section 1491(b)(1) provides this Court with jurisdiction to rule upon an objection made "in connection with *a* procurement or *a* proposed procurement."  *Id.* (emphasis added).  Croman's complaint objected to the 2011 RFP award decisions and the decision to cancel four CLINs in the 2011 RFP.  If section 1491(b)(1) grants this Court jurisdiction to rule upon Croman's objections regarding "a" procurement, the 2011 RFP procurement is that procurement.  The corrective action and the 2012 RFP are separate procurements against which Croman has not protested.

4

Croman argues that *Magnum Opus Technologies, Inc. v. United States*, 94 Fed. Cl. 512, 525 (2010) stands for the proposition that the phrase "in connection with a procurement or a proposed procurement" is "sweeping in scope" and that the Court's jurisdiction extends to "any stage of the federal contracting acquisition process." Pl. Resp. 2. "Sweeping" as it may be, section 1491(b)(1) still contains limits. Croman's interpretation of *Magnum Opus* would inappropriately eliminate all limits to section 1491(b)(1) and would incorrectly expand the Court's jurisdiction to permit entertainment of any protested matter, regardless of whether it involves a procurement that takes place before *or after* the procurement that is protested.

Croman, Pl. Resp. 2-3, also argues that the standard put forth in *GTA Containers, Inc. v. United States*, 2012 WL 562432 (Feb. 22, 2012) supports Croman's position that its protest is not moot. Croman references *GTA*'s two-prong mootness standard: "a case becomes moot because (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and, (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." 2012 WL 562432, at *9 (internal quotations omitted). Croman argues that neither of these prongs have been met in this case. Pl. Resp. 3. In fact, both are met here.

As to the first prong, Croman improperly, Pl. Resp. 3-4, looks to the 2012 RFP[2] as an alleged recurrence of the violation. The proper reference, however, is the December 2011 pre-corrective action awards. As noted, these awards no longer exist and, thus, cannot recur.

As to the second prong, the "interim . . . event[,]" the corrective action, "completely and irrevocably eradicated the effects of the alleged violation" because the "alleged violations" in Croman's complaint only addressed the 2011 RFP (and the abandoned argument regarding the cancelation of the four CLINs), but the 2011 RFP awards no longer exist. Significantly, Croman

---

[2] As the Court is aware, the 2012 RFP is not part of the administrative record. *See* Order (Dkt. 48, issued June 8, 2012). Further, we have moved to strike any reference to the 2012 RFP awards notice letter that Croman attaches to is response as Attachment 1. *See infra* § VIII.

has not alleged *any* violations as to the corrective action or the 2012 RFP.  And, while Croman

contends that the corrective action "did not . . . obviate the fundamental flaws in the Agency's

procurement process," Pl. Resp. 4, Croman waived any right to protest those purported

"fundamental flaws," Def. Mot. 29-32, by not filing a pre-award protest.

Croman's argument that the Forest Service failed "to take truly corrective action," Pl.

Resp. 6, is erroneous.  In Croman's view, the corrective action was not "truly corrective"

because it did not correct the violations Croman alleged in its complaint.  First of all, Croman is

wrong because the purported flaws in the team evaluations that it criticizes were effectively

"corrected" since the team evaluation process was not used in the corrective action.  Def. Mot.

10 n.6.  Second, characterizing the corrective action in the manner that Croman does is insulting

to the protestors whose alleged violations were not dismissed outright by the Government

Accountability Office (GAO), AR 14600, the Forest Service's recognition of which resulted in a

reevaluation under a revised methodology and the issuance of new awards.  Although only two

of the awardees changed from the original awardees, Pl. Resp. 4 n.2, all of the proposals were

reevaluated, AR 16006-08, and new award letters issued as a result.  AR Tab 70.

Finally, Croman makes a flawed effort to distinguish *Technical Innovation, Inc.*, 93 Fed.

Cl. at 279; *see* Pl. Resp. 5-6, which highlights why its protest is moot.  Croman states that

*Technical Innovation* "does not stand . . . for the proposition that where, as here, the 'corrective'

action cures none of the errors initially alleged by the protestor . . . it must file a separate action

in this Court . . . ."  *Id.  Technical Innovation*, however, is analogous to the instant case and

demonstrates that Croman's complaint is moot.  In *Technical Innovation*, an intervenor failed to

take the steps necessary to give the Court jurisdiction to address its concerns because it failed to

file any claims of its own.  *Id.* at 279.  Similarly, Croman has failed to challenge the corrective

action or the 2012 RFP (either before or after awards were made).  Croman's complaint, based

upon the claims made therein and the date on which it was filed, only challenges award decisions that no longer exist.  To paraphrase this Court in *Technical Innovation*, "this case, brought by [Croman] to challenge an evaluation and award[s] which are now defunct," is not the place for Croman to pursue its concerns regarding different procurements.  *Id.*  Accordingly, Croman's protest of the 2011 RFP awards is moot.

## II.        Croman Lacks Standing To Challenge The Corrective Action

Based upon Federal Circuit precedent, Croman "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process.  In other words, [Croman's] chance of securing the award must not have been insubstantial."  *Information Technology & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citing *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed. Cir. 1999), *Am. Fed'n of Gov't Employees v. United States,* 258 F.3d 1294, 1302 (Fed. Cir. 2001), and *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1334 (Fed. Cir. 2001)); Pl. Resp. 6.[3]  Croman had the burden of demonstrating standing, *Dow Elec., Inc. v. United States*, 98 Fed. Cl. 688, 694 (2011), but Croman has not met that burden.

Croman's opening brief failed completely to address why it purportedly possessed standing to challenge the awards for CLINs 17, 28-30, and 32-33 or to challenge the 2012 RFP. Def. Mot. 26-28.  The only standing argument Croman made in its opening brief concerned CLIN 23.  *Id.* at 27-28.  Croman now claims, in its response brief, that it has standing

---

[3] *Information Technology* arguably suggested a lower standing bar when it found that the plaintiff had established standing "because it had greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest."  *Id.* at 1319.  Arguably, showing a "greater than an insubstantial chance" sets a lower standing requirement than demonstrating a "substantial chance."  Perhaps this is why the vast majority of cases that cite to *Information Technology* for its standing standard reference its "substantial chance" or its "chance . . . must not have been insubstantial" standard, rather than the "greater than an insubstantial chance" language that Croman emphasizes here.

presumably for all its challenges because, if its protest is successful and the Forest Service's actions are found to be arbitrary and capricious, "the Government would be obliged to re-bid the contract and the protester would be able to compete for the contract again."  Pl. Resp. 7 (citing *Impresa,* 238 F.3d at 1334).  Croman is incorrect and has not met its burden to demonstrate standing.

First, because Croman failed to demonstrate standing in its opening brief, Def. Mot. 25, it cannot now correct that deficiency by asserting a new standing argument in its response brief. *Brooks Range Contract Services, Inc. v. United States*, 101 Fed. Cl. 699, 710 (2011) ("Plaintiff may not later attempt to assert that it was prejudiced by agency error and therefore has standing in its reply or at oral argument.").

Second, Croman does not satisfy the "substantial chance" standard.  *See Information Technology*, 316 F.3d at 1319.  Even after its response brief, Croman has only argued that it has a "substantial chance" of receiving an award for CLIN 23.  Thus, Croman has not satisfied its burden of demonstrating standing with respect to any of its non-CLIN 23 challenges.  As to CLIN 23, despite its argument, Croman has not demonstrated it has a substantial chance of an award even if it prevails in its protest.  *See id.* at 1319.

Croman contends that the Government's argument that Rainer's bid means Croman would not have a substantial chance of being awarded CLIN 23, Def. Mot. 27-28, runs counter to "the way the OM worked."  Pl. Resp. 8 n.5.  According to Croman, this is because the "effective removal" of Rainer's helicopter from the competition for CLIN 23 "occurred at the same instant that it was being recommended for award of [CLIN 16]."  *Id.*  Croman argues that the Government "ignores the fact that the Agency accepted the OM's recommendation and did, in fact, award [CLIN 16] to Rainer . . . ."  *Id.*

8

It is Croman, however, that ignores the critical fact that, if Siller were not allowed to compete for CLIN 23, Rainer could have been recommended for CLIN 23 instead of being recommended for CLIN 16.  Croman's assumption that Rainer would already have been recommended for CLIN 16 "at the same instant" demonstrates a flawed understanding of "the way the OM worked."  Pl. Resp. 8 n.5.  With Siller removed, Rainer's helicopter could have been determined to be the best value for both CLINs 16 and 23, and then recommended for CLIN 23 based upon the other bids.  For the reasons discussed in our initial brief, Def. Mot. 27-28 (*e.g.,* Rainer's ███████████████████████████████████████████████ ████████████████████████████████), Croman's chance of being awarded CLIN 23 ahead of Rainer was "insubstantial."  *Information Technology*, 316 F.3d at 1319.  Croman's conclusory statement that its "rating of '████████' in three out of four technical factors and its low price," Pl. Resp. 9, when not compared to those of other bidders, does not undermine this conclusion.

Although Croman correctly points out that the *Brooks Range* Court stated that "plaintiff need not be next in line for the award," the Court emphasized that the plaintiff "*must have a substantial chance* of securing the award if the alleged errors are found in the Administrative Record."  101 Fed. Cl. at 712 (citing *Info. Tech.,* 316 F.3d at 1319) (emphasis added).  Thus, even if Croman need not definitively prove it was next in line for the award, *Brooks Range* requires that it must show it had a substantial chance of securing the award.  Moreover, the Court in *Brooks Range* emphasized that conclusory assertions that a plaintiff had a substantial chance of award are insufficient to demonstrate standing where, as in *Brooks Range* and here (at least in its opening brief), there is no disagreement with the agency's technical evaluations of the various bids.  101 Fed. Cl. at 712 ("[P]laintiff argues that 'the record definitely demonstrates that if the Urban/Meridian joint venture were disqualified, [Brooks Range] would have a substantial chance

of receiving award if a rational best value trade[-]off is performed' . . . [h]owever, plaintiff appears to agree with the agency's technical evaluation of both its proposal and of [Offeror X]'s proposal.").  Applying the "substantial chance" standard, the *Brooks Range* Court considered the agency's evaluation of the plaintiff's and other offerors' bids and found:

> [I]f the award were in fact erroneous, it is not unreasonable to conclude, based on the AR, that the award would then go to [Offeror X] based on the agency's relative assessment of the offerors on non-price factors.  Even presuming the alleged error were established, Brooks Range would not have a substantial chance to obtain the award and, therefore, lacks standing to protest.

*Brooks Range*, 101 Fed. Cl. at 713.  Similarly, here, "[e]ven presuming the alleged error were established, [Croman] would not have a substantial chance to obtain the award."  *Id.*

### III.      Croman Has Waived Its Right To Challenge The Awards

We demonstrated in our opening brief that, by failing to file a pre-award protest, Croman waived its right to file a protest of the Forest Service's awards for CLINs 17, 23, 28-30, and 32-33, Def. Mot. 29-32.  We explained that, prior to submitting its proposal in March 2011, Croman was aware of the extent to which the agency prioritized high lift capacity over low price.  *Id.*

In response, Croman erroneously argues that its protest is not one that should or could have been made pre-award and, thus, it did not waive the argument.  Croman asserts that, absent "being clairvoyant," it had no reason to believe the Forest Service would award CLIN 23 to Siller, characterizing Siller's bid for CLIN 23 as "over-the-top," "unreasonable as to price, and/or . . . demonstrat[ing] a lack of understanding of what was needed for CLIN 23."  Pl. Resp. 10; *see also* Pl. Resp. 11 ("[W]illing to spend a large amount of money" on CLIN 23).

First, Croman's derogatory characterizations of Siller's bid for CLIN 23 are inaccurate.  Siller's bid was not "unreasonable as to price" or "over-the-top."  Def. Mot. 49, 53 (explaining that the premium for Siller's helicopters was only 12 percent greater than the average CLIN 23

bid and noting that Croman had the three worst Aircraft Performance ratings of all the CLIN 23 bids). Further, because it was only a twelve percent premium that the Forest Service paid for Siller's superior performing helicopter, this amount was also not a "large amount of money." Pl. Resp. 11. Croman claims to find support for its negative characterizations of Siller's bid price from the Forest Service's statement in the 2011 RFP that "[a]ward may not *necessarily* be made for technical capabilities that would appear to exceed those needed for the successful performance of the work." Pl. Resp. 11; AR 282 (emphasis added). Croman improperly ignores the Forest Service's purposeful inclusion of the word "necessarily." The inclusion of the word "necessarily" makes quite clear upon the face of the 2011 RFP that the Forest Service may in fact make an award "for technical capabilities that [may] appear to exceed those needed for the successful performance of the work."

Second, we correctly stated that "[t]he eligibility of Siller's aircraft, and the Forest Service's willingness to pay for it, were apparent on the face of the 2011 RFP," Def. Mot. 30, despite Croman's claim that our statement "is simply not true." Pl. Resp. 11. As we explained, the 2011 RFP "required minimum, but not maximum, performance capabilities for all CLINs" and "very clearly informed offerors that, after Mandatory Documentation, Aircraft Performance was the most important technical evaluation factor, and that all technical evaluation factors were, together, 'SIGNIFICANTLY MORE IMPORTANT THAN price.'" Def. Mot. 30; AR 117, 280, 282 (emphasis in original). The capitalization of these specific words in the 2011 RFP completely undermines Croman's strained argument that "all indications were that spending less not more was the Forest Service's goal." Pl. Resp. 11.

Croman also knew from the 2011 RFP that CLIN 23 required a helicopter equipped with a fixed tank, Def. Mot. 51; AR 91, and that prices would be evaluated using the Best Value Formula, including a price per pound calculation. Def. Mot. 53-54; AR 275. As such, there was

no clairvoyance required for Croman to recognize the possibility that the Forest Service might award CLIN 23 to Siller or another competitor with similarly strong technical capabilities. Paradoxically, Croman's decision to bid upon all 34 CLINs, when its helicopters clearly were not eligible for half of them, is inconsistent with its claim that it "understood the specification to be minimums." Pl. Resp. 11. Submitting bids for CLINs for which it was ineligible places into question how much scrutiny Croman gave to the plain language of the 2011 RFP.

Third, to rebut our waiver claim, Croman argues, unpersuasively, that it is not challenging the terms of the RFP, the factors set forth therein, or the weights assigned to those factors, Pl. Resp. 10, but rather the Forest Service's evaluation and tradeoff process. *Id.* at 11. Croman attempts to distinguish *Blue & Gold Fleet v. United States*, 492 F.3d 1308 (Fed. Cir. 2007), in which the plaintiff similarly (and unsuccessfully) tried to "characterize[ his challenge] as a challenge to the evaluation." *Id.* at 1313. The Federal Circuit in *Blue & Gold Fleet* held that plaintiff's challenge was "properly characterized as a challenge to the terms of the solicitation." *Id.* As in *Blue & Gold Fleet*, the Forest Service here made decisions "during the solicitation . . . phase of the bidding process" that "may have influenced the evaluation of the proposals." *Id.* The Forest Service, here, decided in drafting the 2011 RFP that it would set minimum, but not maximum performance requirements, AR 117; that technical factors were "SIGNIFICANTLY MORE IMPORTANT THAN price," AR 282; that CLIN 23 required a helicopter equipped with a fixed tank, AR 91; and that prices would be evaluated using a Best Price Formula, including a PPP calculation. AR 275. These solicitation-phase decisions affected the Forest Service's evaluation and tradeoff process, and it is these pre-award decisions that Croman is truly challenging. Thus, Croman's assertion of errors in the evaluation and tradeoff process, as in *Blue & Gold Fleet*, are actually challenges to the 2011 RFP; challenges that Croman waived by not filing a pre-award protest. *Id.* at 1313.

**IV.**     **Croman Has Abandoned Its Argument Concerning The Four Canceled CLINs**

We demonstrated in our opening brief that Croman abandoned the allegation in count four of its complaint that the Forest Service improperly cancelled CLINs 21, 22, 27, and 34. Def. Mot. 32-34. According to Croman's complaint, although the Forest Service cited funding limitations as its reason for cancelling those CLINs, the agency actually desired to avoid procuring the S-61 helicopters that Croman had proposed. AR 15973. However, Croman failed to address this point in either its opening or supplemental briefs. In Croman's response, it once again does not address the substance of this count, being content to argue that it has "not abandoned its allegation." Pl. Resp. 12. Croman acknowledges that it has not actually *addressed* count four in its opening or supplemental briefs; it argues only that it is not *required* until oral argument to address it to avoid a finding of abandonment. Pl. Resp. 13. Croman is wrong.

Croman, erroneously, relies upon *DCS Corp. v. United States*, 96 Fed. Cl. 167 (2010), for the proposition that a plaintiff may assert counts in its complaint, not address those counts at all in *any* of its briefs, and still have those counts considered by the Court. Pl. Resp. 13. The Court in *DCS Corp.* did *not* hold that a claim may be asserted, then dropped, and then raised again at oral argument. The Court in *DCS Corp.* stated that, "[i]n counts two and three of the Complaint, plaintiff pleads issues other than the evaluation and rating of past performance information but does not address these issues in its briefs or at oral argument. Accordingly, these issues are considered to have been abandoned." 96 Fed. Cl. at 169 n.2. This is hardly—as Croman argues it is, Pl. Resp. 13—a ruling that, if the plaintiff *had* raised counts two and three solely and belatedly at oral argument, the Court would not have considered them abandoned. The Court's reference to oral argument is simply a factual statement that, in addition to failing to brief the

13

issues, the plaintiff in *DCS Corp.* additionally failed to raise the issues at oral argument, and both omissions supported the Court's finding of abandonment.

This Court consistently has held that, to preserve issues, a plaintiff must raise them first in its opening brief, and not for the first time in its reply brief or at oral argument. *See, e.g., Orion Technology, Inc. v. United States,* 102 Fed. Cl. 218, 231 n.19 (2011) ("The court normally does not consider contentions first raised at oral argument or in a supplemental brief."); *Brooks Range*, 101 Fed. Cl. at 708 ("[B]oth fairness to the opposing party and to the trial court support the rule that a party waives issues not raised *in its opening brief*.") (emphasis added).

Should Croman attempt to support its allegations of pretext at oral argument, it will have done so for the first time. To date, Croman has only included conclusory allegations of pretext in its complaint. AR 15973. Including an allegation in a complaint is not equivalent to presenting an argument in an opening brief. In *Ironclad/EEI v. United States,* 78 Fed. Cl. 351 (2007), this Court found the plaintiff had waived "counts II, III, IV, and VI of its complaint" because it failed to address those counts "in both its motion for judgment on the administrative record and its response to the defendants' cross-motions." 78 Fed. Cl. at 358; *see also California Industrial Facilities Resources, Inc. v. United States*, Docket No. 12-148C, n7 (Fed. Cl. May 7, 2012) ("Plaintiff's undeveloped assertion in its motion for judgment on the administrative record . . . does not properly raise an argument."). The *Ironclad/EEI* Court went on to state that "[p]laintiff did provide some detail in regard to the claims in the complaint itself, but that is of little significance because 'a party does not waive an argument based on what appears in its pleading; a party waives arguments based on what appears in its brief.'" *Id.* (quoting *Novosteel SA v. United States,* 284 F.3d 1261, 1274 (Fed. Cir. 2002)).[4] This Court should follow

---

[4] To the extent the Court determines it should consider count four of Croman's complaint, the outcome of the 2012 RFP rebuts the allegations in the count. Count four alleges

14

*Ironclad/EEI* and find that Croman has abandoned its arguments concerning the four canceled CLINs.

**V.      The Awards For CLINs 17, 23, 28-30, And 32-33 Were Not Arbitrary And Capricious, An Abuse Of Discretion, Or Otherwise Not In Accordance With Law**

Croman has not rebutted our demonstration, Def. Mot. 34-59, that the Forest Service's awards were not arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.  With respect to the Forest Service's best value determinations, Croman's response once again improperly focuses upon the form of those determinations (*i.e.*, the documentation of tradeoff) and not upon their substance (*i.e.*, legality and rationality).  Croman devotes only one footnote, Pl. Resp. 16 n.9, to contradicting the Government's argument that "even if the administrative record lacks the specific statements Croman alleges it must contain, *there is no evidence that the award decisions were irrational or contrary to law*."  Def. Mot. 36 (emphasis added).  Croman's response also makes misleading statements that require clarification.  Finally, Croman makes an erroneous argument, specific to the CLIN 23 award, that it should not have been required to compete against heavy lift helicopters.

**A.      Croman Has Yet To Allege Or Support The Unreasonableness Of The Award Decisions For CLINs 17, 28-30, And 32-33**

Croman has failed to respond at all to the Government's explanation, Def. Mot. 34-41, of the reasonableness of the awards for CLINs 17, 28-30, and 32-33.  Thus, Croman effectively has conceded the reasonableness of those decisions.  Croman cannot credibly argue that the Forest

---

Forest Service bias against S-61 helicopters was the real reason the Forest Service cancelled four CLINs.  The Forest Service, on June 18, 2012, awarded two CLINs to Siller Helicopters, Inc. for S-61 helicopters.  Pl. Resp., Att. 1, at 2.  This fact refutes Croman's claim that the Forest Service purposefully "avoid[ed] any award to offerors proposing to use S-61 helicopters."  AR 15974.  Although Attachment 1 is the subject of the Government's motion to strike, *see infra* § VIII, we include this information in the event that the Court rejects our motion or receives Attachment 1 as "part of the record before the Court," although striking the attachment from the Administrative Record.  *See* June 8, 2012 Order.

Service acted unreasonably when it chose the technical superiority of Columbia's and

Firehawk's proposals over the less expensive prices Croman offered, given that the "[e]valuation

factors, when combined, [were] SIGNIFICANTLY MORE IMPORTANT THAN price."  AR

282.  This Court "requires only that the final decision reached by an agency be the result of a

process which considers the relevant factors and is within the bounds of reasoned decision

making."  *Banknote Corp. of America v. United States,* 56 Fed. Cl. 377, 380 (2003); *see* Def.

Mot. 41.

 Croman has not even tried to demonstrate that the Forest Service's award decisions for

CLINs 17, 28-30, and 32-33, were inconsistent with the *Banknote* standard, and thus, were

outside "the bounds of reasoned decision making."[5]  At most, Croman argues (while trying to

establish standing) that an award to Croman might not have been unreasonable, given "Croman's

rating of '███████' in three out of the four technical Factors and its low price."  Pl. Resp. 9.

But even assuming, *arguendo*, that Croman did have "greater than an insubstantial chance" of

receiving an award, Pl. Resp. 9, and it did not, it does not logically follow that the SSA's awards

decisions were outside of the "zone of acceptable results" the Court in *Banknote* recognized as

being sufficient to sustain an agency's award.  56 Fed. Cl. at 380.  Therefore, Croman has failed

to provide any reason why this Court should determine the awards of CLINs 17, 28-30, and 32-

33 were irrational.

---

[5] Croman's response includes no section specifically addressing the reasonableness of the
Forest Service's awards.  What little response Croman does make to our argument that the
awards were reasonable appears in a footnote and is directed at the manner in which the
Government illustrated the awardees' technical superiority by comparing their technical ratings
with Croman's.  Pl. Resp. 16 n. 9 (referencing Def. Mot. 41 (*e.g.,* "Columbia had better ratings
than Croman on *three of the four* qualitatively evaluated technical factors")).  This is a problem,
Croman says, because "[t]echnical scores alone . . . do not form the basis for the award of a
contract." *Id.*  However, the technical scores referenced in the Government's motion did not
alone "form the basis for the award of a contract;" we cited them to demonstrate the superiority
of the awardees' proposals and, thus, the *reasonableness* of the award decisions.  Def. Mot. 41.

B.   **A Proper Tradeoff Analysis Was Performed**

In an apparent effort to demonstrate that *the Forest Service* considered it impossible to "engage in an appropriate tradeoff process," Croman quotes from the Forest Service's explanation in a briefing paper regarding the OM as to why it "is not possible," AR 16044, *for the OM* to document tradeoffs between each separate aircraft as compared with any one other aircraft for a given line item. Pl. Resp. 17.  Croman's suggestion that the Forest Service considered an appropriate tradeoff process to be impossible is erroneous.

Contrary to Croman's apparent effort, the Forest Service did engage in an appropriate tradeoff analysis.  As the Forest Service explained, it is not possible for the OM to quantify the tradeoff performed in choosing aircraft X over aircraft Y, because "the OM performs these calculations and assignments simultaneously."  AR 16044.  Instead, the OM can "compare the *set of assignments* from the weighted OM solution to single objective solutions:  the lowest adjectival score, the lowest total cost and the lowest price per pound."  *Id.* (emphasis added).  In this way, the Forest Service was able to determine what it might lose in technical superiority if it chose a set of assignments based entirely upon low price.  AR 16210.  Alternatively, the Forest Service could determine how much more it might have to pay if it chose a set of assignments based only upon technical superiority.  *Id.*  Or, finally, the Forest Service could determine what it would have to sacrifice in technical superiority and total cost if it chose a set of awards based only upon price per pound.  *Id.*  These are all examples of tradeoffs that were documented in Attachment 7 and that were reviewed and considered by the SSA in making his decision.

Croman attempts to minimize the information provided in Attachments 4 and 7, arguing that "[e]ach spreadsheet is merely a computer compilation of the technical scores assigned by the Agency . . . ."  Pl. Resp. 19.  Attachment 4 includes all of the evaluation results for each aircraft, by line item, thus allowing anyone reading it to see a side-by-side comparison of the strengths

17

and weaknesses of each proposal, as reflected in the ratings assigned by TET members.  AR 16046-61.[6]  Attachment 7, AR 16210-11, goes further, displaying various optional sets of award decisions, which allowed the SSA to consider, at each line item, trading some degree of technical superiority for a lower price, or any other tradeoff among the two price factors and the technical factor.  The value of the information provided in these spreadsheets, upon which the SSA made his award determinations, cannot be ignored or minimized, as Croman attempts to do.[7]

Finally, we agree with Croman's statement, Pl. Resp. 23, that "the SSA did not simply parrot back the strength and weaknesses of competing proposals."  The SSA certified that he had "reviewed attachments 1 through 7," "reviewed the model's results," considered that the "intent was to emphasize technical superiority (especially payload capacity) over low price," and confirmed that the recommended awards "represent best value and prioritized aircraft performance over price, while still taking price into account."  AR 16213.  The Court should, thus, reject Croman's claim that the agency's evaluation and tradeoff processes were improper.

---

[6] Thus, in strong contrast to Croman's argument, the administrative record is not "devoid of any articulation of the strengths and weaknesses of the offerors' proposals."  Pl. Resp. 20.

[7] To the extent Croman suggests that the Forest Service was required to create a narrative description of how strong or weak each proposal was compared to every other proposal and to document tradeoffs justifications for the chosen awardee as compared to each other aircraft bid on that line item (in addition to the spreadsheets), it is important to understand how many narrative comparisons that would entail.  For the entire procurement, CLINs 1 – 34 (excluding the four CLINs not awarded), if such comparisons and documentation actually were required of procuring agencies, the Forest Service would have had to perform and document in narrative form 875 separate comparisons.  AR 16061 (Attachment 4, which is comprised of 905 rows of data, where each row is one bid).  Thirty of those rows show the data of the aircraft recommended for award.  We read Croman's original motion as alleging either that each recommended aircraft should be compared against only Croman's proposed aircraft (which is nonsensical in that it ignores every other proposed aircraft) or that each recommended aircraft should be compared against every aircraft proposed for the CLIN in question.  Pl. Mot. 20-21 (suggesting the entire "dazzling array of computer-generated numbers" that illustrated "the relative technical merit of the offerors" must be replaced with "discussion").  Performing the latter would require 875 separate comparisons (*i.e.*, 905 minus 30, the recommended awardees, equals 875).  Attachments 4 and 7 concentrate all of this information in one place.

18

**C.     Croman's Revised Argument That Heavy-Lift Helicopters Should Not Have Been Permitted To Compete For CLIN 23 Is Erroneous**

Croman, in its response brief, Pl. Resp. 24-31, has now changed its position from an argument that the Forest Service should have rejected Siller's T9125M for CLIN 23 for consistency's sake (having rejected two Erickson helicopters), Pl. Mot. 15-18, to an argument that the Forest Service should have rejected the T9125M aircraft (with heavy-lift capacity) as too expensive compared to medium-lift-capacity helicopters.  By removing all heavy-lift helicopters from the price comparisons in its response brief (see below), Croman has effectively resurrected the argument, made during its GAO bid protest, that heavy-lift helicopters should not have been permitted to compete for CLINs 16 – 34.  *See, e.g.,* AR 14535 ("[I]f the Forest Service had intended to procure a Heavy-lift helicopter for Line Item 23, then it should have included Line Item 23 under the Heavy lift specifications.").  The GAO, correctly, rejected this argument as failing to state a valid basis for protest because the RFP clearly permitted competition between heavy and medium-lift aircraft for CLINs 16-34.  AR 15943.

As an initial matter, Croman's revised CLIN 23 argument supports our argument that Croman's protest is untimely because it failed to file a pre-award bid protest.  Def. Mot. 30-32. Croman's revised argument demonstrates that Croman's true objection is to the eligibility of all heavy-lift aircraft to compete for CLIN 23.  Although claiming it "is not challenging the terms of the RFP," Pl. Resp. 12, Croman clearly conveys its belief that the T9125M should have been "rejected" outright, without even any best value analysis, because it is too expensive compared to lesser-capacity aircraft.  By latching onto the high price associated with *all heavy-lift helicopters*, Croman is again attempting to disguise its challenge to the 2011 RFP's terms as a challenge to the Forest Service's best value analysis.

19

There can be no dispute that Croman is arguing that the Forest Service's decision to allow heavy-lift helicopters to compete for CLIN 23 was improper.  In the price comparisons in Croman's response brief, Croman fails to acknowledge the existence of *any* of the ten heavy-lift capacity helicopters (out of sixteen) bid on CLIN 23:

- "Croman, like several other companies proposing Medium-lift helicopters, could meet the specifications laid out for line item 23 at a cost far lower than Siller's."  Pl. Resp. 25.

- "[T]he average total price of all Medium-lift helicopters proposed on and capable of performing line item 23 was $9,093,688."  *Id.* at 26.

- "[T]here is no doubt but that the cost of an award to Siller was about double the projected cost of an award to a [sic] offeror proposing a Medium-lift helicopter that meet [sic] the specifications for line item 23."  *Id.* at 27.

- "On this basis [*i.e.*, a comparison of Siller's availability rate to the average rate for line item 23 bid by all offerors proposing a Medium-lift helicopter], as well as the fact that the projected total cost of any award to Siller is about double the projected cost of an award to any offeror proposing a Medium-lift helicopter that meets the specifications for line item 23, *the Agency should have rejected Siller's proposal* just as it did Erickson's proposal to propose two expensive helicopters."  *Id.* at 28 (emphasis added).

If Croman believes the Forest Service should have rejected Siller's heavy-lift aircraft as being too expensive compared to medium-lift aircraft, it obviously follows that Croman must also believe that the Forest Service should have rejected *all* CLIN 23 bids that met or exceeded Siller's price ($17,675,100).  That would mean rejecting outright, apparently without even a best value tradeoff analysis, all 10 CLIN 23 bids proposing heavy-lift helicopters, leaving only medium-lift aircraft to compete for CLIN 23.[8]  AR 16054 (showing that all CLIN 23 bids of $17,675,100 or higher (column N) are associated with computed payloads (column Q) of greater

---

[8] We cannot conceive of any rationale for rejecting a $17.7 million helicopter as being too expensive and not also rejecting all helicopters that are more expensive than $17.7 million.

than 5,000 lbs.).  Croman's argument, accordingly, directly conflicts with the terms of the 2011

RFP, which stated no maximum performance specification for any of the CLINs.  AR 117.  This

Court should reject this argument, as did the GAO,[9] as meritless because "the RFP explicitly

solicited offers of both medium and heavy helicopters."  AR 15943.

Finally, in its effort to convince the Court that the Forest Service really needed only

medium-lift capacity for CLIN 23, Croman notes that the 2011 RFP was amended so that the

Fresno host base (formerly assigned to CLIN 12) would require a payload capacity of only 3,300

lbs., rather than the 5,000-lb. capacity initially associated with the Fresno CLIN.  Pl. Resp. 26.

But this point does not advance Croman's argument.  First of all, other than simply asserting that

"[t]he only rational basis for the Agency's [amending the 2011 RFP] was to reflect a reduction of

its minimum needs for this item," *id.*, Croman's assertion is entirely without support.

Moreover, there exists a different "rational basis for the Agency's [amending the 2011

RFP]."  Although this different rational basis cannot be entirely supported with evidence from

the administrative record, the existence of a different rational basis refutes Croman's point.

Additionally, it is the actual basis for the agency's amendment.  Namely, the amendment of the

2011 RFP resulted in a change in the duration of the Mandatory Availability Periods (MAPs) for

the Fresno and Mariposa host bases, as was requested by Forest Service Region 5.  The Fresno

host base did not have the personnel available to administer a MAP of 150 days (which is the

CLIN 12 MAP, AR 69), but the Mariposa host base (formerly CLIN 23, with a 90-day MAP, AR

91) did.  These facts are why the locations for the two CLINs were swapped, pursuant to

Amendment 1 to the 2011 RFP.  Furthermore, the amendment did not create any additional

---

[9] The GAO specifically rejected Croman's argument that "contractors could only
interpret the RFP to mean that . . . competition for Line Items 16-34 would come from offerors
proposing Medium lift helicopters whose performance capabilities were relatively close to the
minimum specified."  AR 14535.

medium-lift requirements in the procurement.  CLIN 23, and all CLINs in the 16-34 range, always required only medium-lift capacity.  Likewise, CLINs 1 – 15 always required heavy-lift capacity.  The Forest Service merely moved the Fresno host base from the CLIN 1 – 15 group to the CLIN 16 – 34 group, thus necessitating a change in performance requirements for the Fresno location.  Contrary to the implication in Croman's response, the amendment does not reflect a change in the requirements for CLIN 23.  The amendment merely shows that the Forest Service wanted to swap the CLIN 12 (originally Fresno) and CLIN 23 (originally Mariposa) locations, thus assigning a longer MAP to Mariposa, which was better able to staff a 150-day MAP.

## VI.     Croman's Two New Claims Of False Precision Are Untimely And, In Any Event, Either There Was No Error Or Any Error Did Not Prejudice Croman

In Croman's original motion, Croman argued that the awards of CLINs 17, 23, 28-30, and 32-33 were based upon numerical ratings that were falsely precise for the following reason: "[T]hey were based on the average of averages of mere (unexplained) one-word opinions."  Pl. Mot. 27.  We refuted Croman's entire false precision argument by disproving every element of this allegation.  First, we demonstrated that the opinions were not "unexplained," because they were based upon adjectival rating definitions included in the Source Selection Plan.[10]  Def. Mot. 42.  Second, we demonstrated that the ratings were not based upon "one-word opinions," but upon 16 pages of narrative explanation by the TET.  *Id*. at 43.  Third, we illustrated that the ratings were not based upon the "average of averages," which may have been true of the TET's *initial* evaluation process, but in the corrective action were simply the conversion of an adjectival rating (agreed upon by the entire convened TET, AR 16012) to a numerical value.  Def. Mot. 43.  In sum, we revealed that Croman's imprecision argument was based upon Croman's failure to

---

[10] Croman concedes that the adjectival ratings were defined by quoting the definitions in its brief.  Pl. Resp. 32 n.29.

locate the adjectival definitions in the administrative record and its reliance upon the initial evaluation, instead of the TET's differently structured and well documented corrective action.

Croman's response to seeing its "false precision" allegations completely discredited is to raise additional, entirely new bases for alleging false precision in the numerical ratings. Specifically, Croman is *now* alleging for the first time that:  (1) the way the Forest Service calculated Aircraft Performance scores "distorted the difference between aircraft in the most important factor," Pl. Resp. 32-36[11]; and (2) the Forest Service *never actually performed* a re-evaluation of the Past Performance and Organizational Experience factors, *id*. at 37-38, so the alleged deficiencies in the initial evaluation process remain relevant.

A.      <u>**Croman Has Waived Its New "False Precision" Arguments**</u>

Croman has waived both of these entirely new arguments.  As we have repeatedly noted, it is the law of this circuit that a party waives a ground for relief if the argument is not raised in its opening brief.  *See Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.") (emphasis in original); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) (same).  This Court has consistently applied the *Novosteel* waiver rule in the context of bid protest actions where a plaintiff included a ground for relief for the first time in its response and reply brief rather than including the argument in its opening motion for judgment upon the administrative record.  *See Survival Systems, USA, Inc. v. United States*, 102 Fed. Cl. 255, 262-63 (2011); *Chenega Management, LLC. v. United States*, 96 Fed. Cl. 556, 572 n.25 (2010); *Brooks Range*, 101 Fed. Cl. at 709.

---

[11] This argument also is mentioned in passing at Pl. Resp. 16 n.9 and 20 n.11.

Croman has never, until its response brief, argued that "virtually every numerical scoring of Aircraft Performance is erroneous" due to the "use of an improper scale."  Pl. Mot. 35.  That is not surprising because, in its earlier false precision argument, Croman had no reason to challenge the Aircraft Performance calculation (which was entirely based upon objective data, Def. Mot. 45-46) because its argument targeted only those ratings it claimed were "subjective and inherently imprecise" (*e.g.*, the ratings for Past Performance and Organizational Experience). Pl. Mot. at 32.  In fact, the words "Aircraft Performance" appear nowhere in the false precision section of Croman's opening brief.  Pl. Mot. 26-33.  Moreover, nowhere else in the opening brief is there any reference to Croman's new argument that the way the Forest Service calculated ratings for the Aircraft Performance factor was improper in any way.  Croman's attack on the agency's method of calculating Aircraft Performance ratings is clearly an entirely new claim.

Croman also has never, until its response brief, claimed that the Forest Service did not actually re-evaluate Past Performance and Organizational Experience, and instead "simply accepted the [unsupported] numerical technical scores originally produced" in the initial evaluation process.  Pl. Resp. 38.  Croman necessarily must make this claim to salvage its false precision argument, because, unless Croman can demonstrate that the Forest Service "used the averaged and reaveraged four decimal place numerical technical scores," "*just as it did in the initial OM process*," *id.* at 40 (emphasis added), then Croman no longer has any basis for arguing the technical ratings were falsely precise.  Until now, Croman has not asserted that the Court should base its ruling upon the initial evaluation because the re-evaluation process did not occur.

Croman must be held to the claims asserted in its opening brief—and only those claims— in arguing the Forest Service based its award decisions upon falsely precise numerical ratings. Those claims, which the Government has disproved, are that the adjectival ratings were undefined and that the TET re-evaluation ratings were unsupported by any narrative or

24

annotations.  By not raising its two new claims until it filed its response brief, Croman has

waived the claims that the Forest Service used "distorted" numerical scores in its Aircraft

Performance ratings and that it failed to re-evaluate two technical factors.

> **B.**      **Any Inaccurate Assignment By The Forest Service Of A 'Marginal' Rating To Croman's Aircraft Did Not Affect 'Virtually Every' Numerical Rating, And Resulted In No Prejudice To Croman**

Even if the Court decides Croman has not waived its claim that the Forest Service

"erroneously" calculated the Aircraft Performance ratings, the Court should dismiss that claim

because Croman cannot (and has not tried to) demonstrate that the alleged error was prejudicial

to any offerors or, more importantly, to Croman itself.

"A protester must show not simply a significant error in the procurement process, but

also that the error was prejudicial, if it is to prevail in a bid protest."  *Statistica, Inc. v.*

*Christopher*, 102 F.3d 1577, 1581 (Fed. Cir. 1996).  Without describing any harm it may have

suffered as a result, Croman makes the broad, and inaccurate,[12] claim that "based on the use of

an improper scale, virtually every numerical score in Aircraft Performance is erroneous."  Pl.

Resp. 35.

In addressing this new claim from Croman, we must begin by describing the alleged error

for what it is, and not what Croman exaggerates it to be.  That is, the descriptors "Marginal" and

"Unacceptable" the Forest Service assigned to numerical Aircraft Performance ratings in the 3.1-

5.0 range incorrectly implied that the aircraft in question did not meet performance requirements

when, in fact, they did.[13]  This accurate description of the error is a far cry from Croman's claim

---

[12] Croman does not explain how its allegations of "improper scale" support a finding that numerical scores *lower than* 3.1 are erroneous.  Pl. Resp. 35 (citing deficiencies in only ratings in the 3.1-5.0 range).

[13] The problem with the Aircraft Performance calculation, Croman says, is that it has the potential to result in a rating of 3.1-4.9 (Marginal) for an aircraft that exceeds the performance specifications for any given CLIN.  Pl. Resp. 35.  Because the SSP defines "Marginal" as "[t]he

25

that "virtually every numerical score in Aircraft Performance is erroneous."  Pl. Resp. 35.  In

fact, the Forest Service simply spread the Aircraft Performance numerical ratings over a 5-point

scale instead of concentrating them within a 2-point scale, which would have eliminated the

application of the "Marginal" and "Unacceptable" descriptors to helicopters that met

performance requirements.  If the Forest Service had scored Aircraft Performance on scale of 1-

2.9, then it still would have to differentiate between the helicopters' performance capabilities in

order to qualitatively evaluate the Aircraft Performance factor, which the 2011 RFP required.

AR 280.  For example, a helicopter that received the worst Aircraft Performance rating on a 1-5

scale (5.0) still would receive the worst Aircraft Performance rating on a 1-2.9 scale (2.9); only

the number would change, not the helicopter's rating *relative to the competition*.

    At bottom, if the Forest Service were to correct the improper scale identified by Croman

in its response brief, Croman still would not have a substantial chance of receiving an award.

"To establish prejudice a protester must show that there was a substantial chance it would have

received the contract but for the government's error in the bid process."  *Labatt Food Service,*

*Inc. v. United States*, 577 F.3d 1375, 1380 (Fed. Cir. 2009).  Here, the use of a more condensed

scale for the Aircraft Performance factor would not have improved Croman's placement in that

scale.  Croman does not argue that it would have, nor does it specify any way in which Croman,

specifically, was harmed by use of an improper scale.  "A protester must demonstrate how an

alleged error by the government would result in 'particularized harm' to the protester."  *Brooks*

---

proposal fails to meet minimum requirements," Croman says the "Marginal" rating that was
applied to helicopters in the 3.1-4.9 range was inconsistent with the reality of those helicopters'
performance capabilities.  *Id.*  Croman makes the same argument with respect to Aircraft
Performance ratings of 5.000 (Unacceptable).  Pl. Resp. 35.  However, Croman's helicopters did
not receive any 5.000 ratings.  AR 16062.  In fact, no helicopters did.  AR 16062-3.  But, even if
another offeror had improperly received an Unacceptable rating for an aircraft that was, in fact,
acceptable, Croman cannot point to other offerors' injuries to establish its own standing.  *MED*
*Trends, Inc. v. United States*, 101 Fed. Cl. 638, 647 (2011) (plaintiff could not "seek to enforce
[other offerors'] rights in this bid protest" where it could not show harm to itself).

*Range*, 101 Fed. Cl. at 706 (citing *Labatt Food Service*, 577 F.3d at 380 ("Without a showing of

harm specific to the asserted error, there is no injury to redress, and no standing to sue.")).

Without such a showing, "this court lacks subject matter jurisdiction over the protest, 'regardless

of whether the government's conduct was arbitrary, capricious, or contrary to law.'" *Id.* (citing

*MED Trends, Inc. v. United States*, 101 Fed. Cl. 638, 642 (2011)).

 Croman, however, has failed to demonstrate that the use of these scores, even assuming

them to be "distorted," had any effect on *its* chances of receiving an award.  Conceivably, an

offeror could have been harmed if all of the following occurred:  An offeror proposed an aircraft

with exactly 3,300 lbs. of lift capacity; it thus received a 5.000 rating on Aircraft Performance;

and the TET declined to evaluate that aircraft because it considered a 5.000 to be

"Unacceptable."  But that scenario did not occur.  No aircraft received a 5.000 rating, AR 16062-

3, so it is unknown whether the TET would have rejected a 5.000-rated aircraft.  We do know,

however, that some of the helicopters that received Aircraft Performance ratings in the 3.1-4.9

range were not only evaluated by the TET, but they also received awards, *despite* falling within

the "Marginal" range for Aircraft Performance.  *See, e.g.,* AR at 16050 (CLIN 16 awarded to

B699RH with Aircraft Performance rating of 4.2673) and 16052 (CLIN 19 awarded to B526MW

with Aircraft Performance rating of 4.3588).  So, regardless of the word applied to Croman's

numerical rating, and regardless of how the SSP defined that word, all of Croman's aircraft were

evaluated by the TET, included in the OM analysis, and given credit for the extent to which their

performance exceeded the minimum requirements relative to other aircraft bid at each line item.

AR 16013.  Croman does not argue otherwise.  Moreover, the same Aircraft Performance

calculation applied equally to all aircraft.  Even if one accepts that Croman's helicopters should

not have been described as "Marginal," every other helicopter received the same treatment, so

Croman was not disadvantaged relative to its competition.

Simply put, there is no connection between Croman's failure to receive any CLINs and the assignment of Marginal Aircraft Performance ratings to its aircraft. Without showing such a connection, Croman cannot demonstrate it suffered any specific harm. *See Labatt,* 577 F.3d at 1381 (because there was "no connection between the government's . . . error and Labatt's failure to secure the contract," there was no "harm specific to the asserted error, there [was] no injury to redress, and no standing to sue"). Croman must be able to show that the harm was so significant as to affect what would otherwise not have been a "substantial chance" of receiving an award. *Id.* at 1380 (pointing out government's error "neither helped not hindered any offeror" and thus, if corrected, would not have increased protester's chance of receiving award). Accordingly, even if the Court permits Croman to address its newly raised "distortion" claim at oral argument, it should reject that claim, because Croman has not alleged or shown that it was prejudiced as a result of an improper numerical rating scale.

### C.   Croman's New Argument That The Forest Service Never Performed A Re-Evaluation Of The Past Performance And Organizational Experience Factors Is Erroneous

Croman's last-minute claim that the Forest Service never performed the corrective action it promised GAO it would perform is far-fetched, without support in the AR, and utterly false. The AR is replete with proof that the TET not only re-evaluated proposals, as it said it would, AR 15947, but changed its process for doing so[14] in order to correct errors in the initial evaluation upon which Croman repeatedly attempts to rely. For example, in the corrective action, the TET added 16 pages of narrative explanation that had been lacking in the initial evaluation documentation, AR 16018-34. In addition, the TET changed the way in which it evaluated the Safety/Risk Management factor to better account for offerors' accident histories.

---

[14] Croman continues to ignore this fact, still referring, for example, to "the TET's four teams," which were utilized in the initial evaluation and not in the corrective action. Pl. Resp. 36.

AR 16014.  And, following a re-evaluation by the TET of offerors' Past Performance

information, the Past Performance factor was "revised and re-rated."[15]  AR 16022.  The re-

evaluation of the Safety/Risk Management and Past Performance factors resulted in different

ratings for some offerors, as is plainly shown in the memorandum entitled "Reevaluation of

Offerors-Request for Source Selection Authority."  AR 15992-16003.  For Croman to now allege

that the re-evaluation did not occur, based solely only upon the similarity in award results and

"through the Re-evaluation repeating the same numerical scores for the majority of the offerors,"

Pl. Resp. 38, is contrary to all evidence and to the rule in this circuit that "government officials

are presumed to act in good faith, and it requires well-nigh irrefragable proof to induce the court

to abandon the presumption of good faith dealing."  *T & M Distributors, Inc. v. United States,*

185 F.3d 1279, 1285 (Fed. Cir. 1999) (internal citations omitted).

**VII.      Croman Is Not Entitled To The Injunctive Relief It Requests**

Despite Croman's attempt to establish otherwise, Croman has not met its burden,

*Carahsoft Tech. Corp. v. United States*, 86 Fed. Cl. 325, 337 (2009), of satisfying the four

factors, *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004), necessary to justify

the "extraordinary remedy" of a permanent injunction.  *Academy Facilities Mgmt. v. United

States*, 87 Fed. Cl. 441, 473 (2009).

**A.      Croman Has Fundamentally Altered Its Requested Injunctive Relief And
Implicitly Conceded That The Court Cannot Direct A Contract Award To It**

With its response brief, Croman has not just "reiterate[d], and ma[d]e more specific," Pl.

Resp. 40, but rather fundamentally altered its request for injunctive relief from what it requested

in its original motion and supplemental brief.  Compare Pl. Mot. 35-40 and Pl. Supp. 5-7 with Pl.

Resp. 40-47.  Previously, Croman argued that it was entitled to have this Court:

---

[15] Organizational Experience was also reevaluated, but the Contracting Officer and TET
Chair "found no issues and therefore no changes were made to this factor."  AR 16029.

    a.      Enjoin the Forest Service from obtaining performance on CLIN 23 from Siller or any company other than Croman, and direct the Forest Service to consider applying the saving to implementing the cancelled CLINs, Pl. Mot. 34;

    b.      Enjoin the Forest Service from obtaining performance on CLINs 29, 30, and 32 from Columbia or any company other than Croman, *id.*;

    c.      Enjoin the Forest Service from obtaining performance on CLINs 17, 28, and 33 from Firehawk or any company other than Croman, *id.*;

    d.      In the alternative, direct the Forest Service to reevaluate all proposals in accordance with the Court's opinion, *id.*; and

    e.      Enjoin the Forest Service from obtaining performance on CLINs 21, 22, 27, and 34 from any company other than one "properly evaluated" under the terms of the 2011 RFP for those CLINs, Pl. Supp. 5.

Now, Croman argues that, based upon evaluation and tradeoff process errors, it is entitled to

have this Court:

    a.      Enjoin the Forest Service from obtaining performance on CLINs 29, 30, and 32 from Columbia, Pl. Resp. 40-41;

    b.      Enjoin the Forest Service from obtaining performance on CLINs 17, 28, and 33[16] from Firehawk, *id.*; and

    c.      Enjoin the Forest Service from obtaining performance on CLIN 23 from Siller. *Id.*

Additionally, and in the alternative, Croman argues that, based upon the Forest Service's failure

to reject Siller's proposal for CLIN 23 as too expensive, it is entitled to have this Court:

    d.      Enjoin the Forest Service from obtaining performance on CLIN 23 from Siller, *id.*; and

    e.      Enjoin the Forest Service from obtaining performance on CLIN 23 from any offeror until the Forest Service "properly" re-evaluates CLIN 23 and completes a "proper" tradeoff process. *Id.* at 41-42.

---

[16] Croman inadvertently suggested Firehawk was awarded CLIN 32 when it intended to write CLIN 33. Pl. Resp. 41.

Finally, Croman argues that it is entitled to have this Court:

> f.     Enjoin the Forest Service from obtaining performance on
> "the services covered by" the CLINs 21, 22, 27, and 34
> 2011 RFP or the 2012 RFP from any offeror other than one
> "properly" evaluated under the 2011 RFP.

Significantly, and appropriately, Croman's altered request for injunctive relief implicitly concedes that this Court cannot direct a contract award to Croman.  Def. Mot. 60 (citing *Parcel 49C Ltd. Partnership v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994)).  Indeed, it is the role of procuring agency, not the Court, to select Government contractors.  *See* 48 C.F.R. § 15.308; *see also CCL Serv. Corp. v. United States*, 43 Fed. Cl. 680, 683 (1999).

## B.     Croman Is Not Entitled To The Altered Injunctive Relief It Requests

Croman's last request, delineated above as (f), is entirely inappropriate here.  Croman has abandoned count four of its complaint in which it alleged the Forest Service improperly cancelled CLINs 21, 22, 27, and 34.  Moreover, Croman did not protest the 2012 RFP pre-award and has not protested the 2012 RFP awards.  As such, Croman cannot request such injunctive relief.

With respect to Croman's remaining requested injunctive relief, it can be summarized as a request that this Court enjoin the Forest Service from proceeding with the awards for CLINs 17, 23, 28-30, and 32-33 until a "proper" evaluation and tradeoff process is performed, which Croman contends should have included the rejection of Siller's proposal for CLIN 23.  Although Croman is entitled to *request* such relief, Croman has failed to satisfy its burden of establishing that it is entitled to *obtain* such extraordinary relief.

### 1.    <u>Croman's Failure Upon The Merits Remains Dispositive</u>

As demonstrated above and previously in our original motion, Croman cannot prevail upon the merits of its protest.  Def. Mot. 60.  It, therefore, remains the case that the Court should end its inquiry and deny Croman's requested permanent injunctive relief.  *Id.* (citing cases).

### 2.    <u>Croman Has Not Been Irreparably Harmed</u>

In its response brief, Croman insists that its "lost opportunity to compete in a fair procurement process and resulting lost profits" *can* constitute irreparable harm.  Pl. Resp. 42 (citing cases).  But Croman never explains *why* lost opportunity and lost profits actually do constitute irreparable harm in the present case.

For example, Croman relies upon two cases that are easily distinguishable.  Croman cites to *Contracting, Consulting, Engineering LLC v. United States*, 2012 WL 1278042 (Fed. Cl. Apr. 16, 2012), where this Court found that the "*plaintiff ha[d] demonstrated* irreparable harm in the form of lost profits and a lost opportunity fairly to compete." *Id.* at *12 (emphasis added).  In that case, the Court's ruling was based upon the plaintiff putting forth evidence regarding the "highly specialized work" involved in the contract and the "limited . . . qualified labor pool." *Id.* And even then, the Court dug deeper, addressing contractor incumbency and whether the awardee had actually, as opposed to potentially, offered employment to its employees. *Id.* (citing *PGBA, LLC,* 60 Fed. Cl. at 221 (recognizing that loss of opportunity to fairly compete for contract *can* amount to irreparable injury *where protester can show* that it will *inevitably* suffer harm as a result)).  There are no comparable facts here.

Similarly, Croman cites *Bayfirst Solutions, LLC v. United States*, 102 Fed. Cl. 677 (2012), where this Court found "the loss of potential profits from a large government contract award, *in this instance* . . . constitute[d] irreparable harm." *Id.* at 696 (emphasis added).  The specific rationale for why "in this instance" the lost profits constituted irreparable harm was

32

redacted from the published opinion.  *Id.* at 696 n.25.  But the Court still had a rationale based upon evidence put forth by the plaintiff that is not present here.

Ultimately, Croman has not put forth anything other than conclusory statements and case cites to support its position.  As such, Croman cannot satisfy its burden.  The cases Croman cites do not refute our demonstration that economic harm *alone* is not sufficient to establish irreparable harm.  Def. Mot. 60-61 (citing *Minor Metals, Inc. v. United States*, 38 Fed. Cl. 379, 381-82 (1997) (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983) (implying that irreparable injury requires a showing of more than just economic harm))).

The Supreme Court's decisions in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) and *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743 (2010) mandate the conclusion that Croman is not entitled to injunctive relief.  Def. Mot. 61-62.  Although Croman claims that *eBay* and *Monsanto* "reinforce[d] the applicability of the four-factor test," Pl. Resp. 44, Croman ignores the import of the Supreme Court's decision in *eBay*:  In limiting monetary remedies in bid protests, there is no evidence that Congress intended to create a presumption that injunctive relief should issue in the event that a plaintiff succeeds upon the merits.  547 U.S. at 391-92.  For that reason, the Supreme Court stated in *Monsanto* that it "is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue under the traditional four-factor test[.]"  130 S. Ct. at 2757 (emphasis in original).  For all the foregoing reasons, Croman has not demonstrated that it has suffered irreparable harm.

### 3.    The Balance Of Harms Does Not Favor Croman

As Croman has done nothing in its response brief to demonstrate its claim of irreparable harm when compared to the Forest Service's minimal harm, *see supra* § VII(B)(2), the "stalemate" that exists in the present balance of harms analysis continues, Def. Mot. 63, and thus,

remains non-dispositive.  That said, Croman's balance of harms arguments in its response brief focus upon balancing the alleged harm it will suffer against the harm that intervenors will suffer if this Court invalidates their awards.  Pl. Resp. 45-46.  Croman's suggestion that the intervenors will not be harmed because the Forest Service has chosen to exercise options contained in the previous Exclusive Use contracts is at best shortsighted.  *Id.* at 46.  If Croman's alleged lost profits from not being awarded a CLIN constitute irreparable harm, the intervenors' lost profits upon any invalidation of their awards would similarly constitute lost profits, with the added proviso that the intervenors have also incurred preparatory costs.  Pl. Resp. 46 n.42.  Croman dismisses these preparatory costs as insignificant compared to Croman's potential lost profits, but that ignores the intervenors' potential lost profits.  Moreover, Croman's reference to the intervenors' call when needed contracts as "an opportunity to fill any gaps in coverage" hardly demonstrates they will suffer less harm than Croman as Croman admits it also has such a contract with the Forest Service.  *Id.*  Given that Croman's helicopters are not currently set to service any of the 2011 RFP CLINs, Croman may have more to gain than the intervenors through its call when needed contract.

### 4.        An Injunction Is Not In The Public's Interest

In its response brief, Croman argues that the "well-established" public interests of protecting the integrity of the procurement system and ensuring the Government follow applicable procurement regulations outweigh the public interest in avoiding interference with the procurement process of Government agencies.  Pl. Resp. 47.  Croman rejects the notion that the Court would be interfering with the procurement process by issuing an injunction because, it argues, the Forest Service did not exercise its discretion "within the confines of the terms of the RFP and/or applicable law and regulations."  *Id.*  But, if Croman's unsupported argument is

34

correct, the equally well-established public interest in avoiding interference with the procurement

process would be a fiction.

Moreover, Croman's argument turns upon its success upon the merits, but Croman cannot

prevail upon the merits of its protest.  In Croman's view, the public interest in preserving the

integrity of the procurement process is alone dispositive.  But this Court has previously found

otherwise.  *See Furniture by Thurston v. United States*, 103 Fed. Cl. 505, 521-22 (2012) ("It is,

of course, a truism that there is an overriding public interest in preserving the integrity of the

procurement process by requiring the government to follow its procurement regulations.  But it is

equally clear that assuring the timely completion of Government contracts and protecting the

public fisc are strong public interests.  Under the specific facts of this case, the latter concerns

win out.") (internal citations and quotations omitted).  At best, the public interest factor here is

non-dispositive.  As this Court held in *Contracting Consulting Engineering LLC v. United States*,

103 Fed. Cl. 706 (2012), "when both sides contend that they are seeking to effectuate this

important goal, the court may find that the public interest does not clearly favor either party in

the dispute."  *Id.* at 714 (citing *Am. Signature, Inc. v. United States,* 598 F.3d 816, 830 (Fed. Cir.

2010)) (internal quotations omitted).

**VIII.      The Court Should Strike Attachment 1 To Croman's Response Brief And Related Portions Of That Brief Because Its Inclusion In The Administrative Record Is Not Necessary For Effective Judicial Review**

Pursuant to Rules 7 and 12(f) of the RCFC, the Government moves to strike Attachment

1 to Croman's response brief as well as related portions of that brief.  On June 8, 2012, the Court

denied Croman's motion to supplement the administrative record, which sought to include in the

administrative record the 2012 RFP for four helicopters to be based in Boise, Idaho.  *See* Order

(Dkt. 48, issued June 8, 2012).  In so doing, the Court held that it would "receive[ the 2012 RFP]

as part of the record before the Court, although not at this time as part of the administrative

record itself." *Id.* Despite the fact that the 2012 RFP is not a part of the administrative record, Croman has attached to its response a document that is related to the 2012 RFP and not to the protested procurement. Pl. Resp. 4 n.1. Specifically, Attachment 1 to Croman's response is a letter Croman received from the Forest Service, dated June 18, 2012, notifying Croman that it did not receive any awards under the 2012 RFP. Moreover, this time Croman did not move to supplement the administrative record.

The United States respectfully requests that the Court deny Croman's attempt to supplement the administrative record with Attachment 1, regardless of its failure to move the Court to do so first, and strike both Attachment 1 and related portions of Croman's brief. The materials to be considered by the Court when it is engaged in a "record review" are those before the decision-making authority at the time of its decision: "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402 (1971). Thus, "the parties' ability to supplement the administrative record is limited . . . to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009).

Based upon this precedent, the Court previously found that Croman "failed to demonstrate how the omission of [the 2012 RFP] from the administrative record would preclude effective judicial review of the agency's decision to cancel four line items in [the 2011 RFP]," noting that "[t]he administrative record currently contains documents relating to the decision to cancel four line items in [the 2011 RFP]." *See* Order at 2. As implicitly acknowledged by this Court, the 2012 RFP was not before the Forest Service when it made award decisions under the 2011 RFP or when it decided to cancel four line items under that solicitation. *Id.* Clearly, then,

36

a letter detailing the awards made under the 2012 RFP suffers from the same deficiencies. Moreover, Attachment 1 has not even been the subject of a motion to supplement the administrative record.  Under *Axiom* and related cases, if not merely because Croman failed to move the Court for leave to supplement the administrative record, the Court should strike from the administrative record Attachment 1 and all related portions of Croman's brief.

Furthermore, the purpose for receiving the 2012 RFP as part of the Court's record on June 6, 2012, was because, at that time, the yet-to-be-determined awards under the 2012 RFP could have mooted Croman's protest in this case.  *Id.* (quoting Def.'s Opp'n to Pl.'s Mot. to Supp. the AR. 10).  But, as Croman notes in its response brief, the Forest Service made its awards under the 2012 RFP on June 18 and Croman has yet to withdraw its protest in this case (*i.e.,* the 2012 RFP awards have not mooted Croman's protest).  Pl. Resp. 3-4.  Therefore, the purpose for receiving the 2012 RFP into the Court's record no longer exists, nor can that reasoning apply to Attachment 1 and related portions of Croman's response brief to permit them to become part of the Court's record.

## <u>CONCLUSION</u>

For the foregoing reasons and the reasons in our opening brief, we respectfully request that the Court dismiss plaintiff's complaint for lack of subject matter jurisdiction; or, in the alternative, deny plaintiff's motion for judgment upon the administrative record, enter judgment upon the administrative record in favor of the Government, and deny the injunctive relief that plaintiff requests.  Moreover, we respectfully request that the Court strike Attachment 1 to plaintiff's response brief from the record as well as the related portions of plaintiff's response brief.

Respectfully submitted,


STUART F. DELERY
Acting Assistant Attorney General


JEANNE E. DAVIDSON
Director


s/ Scott D. Austin
SCOTT D. AUSTIN
Assistant Director


OF COUNSEL                          s/ Russell J. Upton
ELIN M. DUGAN                       RUSSELL J. UPTON
Senior Counsel                      Trial Attorney
Department of Agriculture           Department of Justice
Office of the General Counsel       Civil Division
General Law And Research Division   P.O. Box 480
1400 Independence Ave, SW           Ben Franklin Station
Room 3311-S                         Washington, D.C. 20044
Washington, D.C. 20250              Telephone:  (202) 305-3634
Telephone:  (202) 720-4978          Facsimile:  (202) 514-7969
Facsimile:  (202) 720-5837          E-mail:  Russell.J.Upton@usdoj.gov
E-mail:  Elin.Dugan@ogc.usda.gov

July 3, 2012                        Attorneys for Defendant